Eversole, Adm'x *vs.* Maull.

SARAH A. EVERSOLE, Adm'x of A. S. EVERSOLE vs. EDWARD A. MAULL.

*Sale of Mortgaged premises to satisfy mortgage Note, held by an Innocent purchaser, for value, without notice of Fraud of mortgagee's Attorney to whom the note was transferred for Collection alone, but sold by him as Owner—Sale not to be set aside for Relief of Mortgagee's representative—Transfer of a Negotiable Note—Defences to an Overdue Note—Who to lose, when both parties Innocent—When and as to what Answer to be considered as True.*

On 1st March, 1875, a petition was filed in the Circuit Court of Baltimore City, by A. S. E. through J. F., his solicitor, for the sale of mortgaged premises. A decree was passed on the following day. On the 29th May, 1875, by order of the solicitor, the decree was entered to the use of E. A. M. On the 15th March, 1876, the usual affidavit to the mortgage claim was made by E. A. M., as assignee of the note, which, after its maturity had been delivered for collection alone to J. F. who, as it subsequently appeared, sold the same to E. A. M. for $500, E. A. M. being an innocent purchaser without knowledge of the defect in J. F's title. The note was for $750, and was endorsed in blank, "without recourse," by A. S. E. the payee, and by J. F. The mortgaged property was sold to E. A. M. for $500, and on 19th April, 1876, the sale was finally ratified and

confirmed, and a deed made to E. A. M. On 6th June, 1877, the administratrix of A. S. E., petitioned the Court, that the entry of the decree to the use of E. A. M., might be vacated, and the sale of the property annulled, and the property be sold by a substituted trustee on the ground, that in the sale of the note and of the property, J. F. had acted without the authority or knowledge of, and had grossly deceived his client. The Court below dismissed the petition, and also overruled an account of the auditor distributing the proceeds to the petitioner; who thereupon appealed. HELD :

That as E. A. M. purchased the note in good faith and for value, without notice at the time, either actual or presumed, that J. F. had no authority to sell and transfer it, or that he was committing a fraud on his client by so doing, no relief can be afforded the appellant.

A negotiable promissory note may be endorsed and transferred after as well as before maturity, the endorsee in the latter case taking subject to all equities between the antecedent parties to it.

The only defences against which an endorsee has to guard in taking an overdue note, are, those which have arisen since the execution of the note, and which are not collateral but relate to the note itself; and those which are inherent in the note and which would show it to have been void *ab initio*, such as fraud, mistake or absence of consideration.

If a loss occurs by which one of two innocent persons must suffer, that one should sustain the loss, who has most trusted the party through whom the loss came.

Where a cause is heard on bill and answer, the latter is to be considered as true in regard to all matters in it, which are susceptible of proof by legitimate evidence.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, BRENT and MILLER, J.

*B. Howard Haman* and *John P. Poe,* for the appellant.

The appellant maintains that the sale of the mortgaged property ought to be set aside, or if the validity of the

sale is not impeached, the proceeds ought to be awarded to the appellant.

Because no proper affidavit was made of the mortgagee's claim, that by Maull being inoperative, as he was not the mortgagee, nor was he in any way authorized to make the affidavit.

Because the decree for the sale of the mortgaged premises was entered to the use of Maull upon a mere written order of Mr. Eversole's solicitor, whereas it is provided in Article 4, section 789, Code P. L. L., that "the said entries (to the use) shall not be made without an order or direction in writing, to be acknowledged before the Judge of said Court or a justice of the peace by the persons purporting to sign the same, and filed and recorded by said clerk."

Maull took as assignee of this overdue and dishonored note the rights of the assignor, and nothing more. *Annan vs. Houck,* 4 *Gill,* 331; *Renwick vs. Williams,* 2 *Md.,* 356; *Newell vs. Gregg,* 51 *Barb.,* 263; *Sylvester vs. Crapo,* 15 *Pick.,* 92; *Angle vs. Ins. Co.,* 92 *U. S.,* 330; *Clarke vs. Dederick,* 31 *Md.,* 148; *Arents vs. Commonwealth,* 18 *Gratt.,* 750; *Emerson vs. Crocker,* 5 *N. H.,* 159; *Vermilye vs. Adams Express Co.,* 21 *Wall.,* 138; *Stevenson vs. O'Neal, et al.,* 71 *Illinois,* 315; *Cumb. Coal & Iron Co., et al. vs. Parish,* 42 *Md.,* 613, 614.

The intervention of the equitable principle, that "where one of two innocent parties must suffer, *he* must suffer who misled the other," cannot be successfully invoked by the appellee, because he is not, in the eye of the law, an innocent party. Maull's position is worse than that of an assignee of a mere *chose in action* under similar circumstances; for the fact that the note was overdue when transferred to him is of itself *notice* of the fraud, and of the consequent defect in Frame's title. How can a *particeps fraudis* take advantage of this equitable principle?

*Fisher vs. Leland, et al.*, 4  *Cush.*, 456; *Foley vs. Smith*, 6 *Wall.*, 492.

Even if the note in controversy is to be regarded in the light of an ordinary *chose in action*, or a chattel, Maull has no title to it.   Title cannot rise higher than its source. *Thomas vs. Kinsey*, 8 *Georgia*, 421; *Decan vs. Shipper*, 11 *Cas.*, 243, *(Penna.;)  Gurney vs. Behrend*, 3 *El. & B.*, 633; *Bank vs. The Railroad Co.*, 3 *Kern.*, 599; *Dows vs. Perrin*, 16 *N. Y.*, 333.

*Wm. Shepard Bryan* for the appellee.

The case made by the petition was heard on petition and answer, and, thereby, all the statements of the answer were admitted to be true.   *Warren vs. Twilley*, 10 *Md.*, 39.   The answer shows that Maull purchased the note *bona fide*, for value, without any knowledge of the alleged fraud.

The note was endorsed by Eversole "without recourse," and invested the holder (Frame) with all the visible and usual evidences of ownership.   The party thus holding the note sells it to a *bona fide* purchaser for value, who has no notice of any supposed fraud.   This sale carried the entire right.   *Story on Agency, section* 228; *Story's Equity Juris., section* 1503.

In the case of *Foley vs. Smith*, 6 *Wallace*, 492, the real owner of the note entrusted the Bank of Kentucky with the note, to be collected when due; and the Court say that the trust ceased when the note was protested.   The sale in that case, of the note after protest, was made by one who held no authority from the owner; the authority previously given having terminated.   But in the case at bar Frame's authority did not commence until the note was overdue, and it was still in full effect when the sale was made to Maull.

On the hearing of the petition there was no evidence whatever of fraud.   The statements of the petition are

not evidence. *Briesch vs. McCauley,* 7 *Gill,* 189. Every-
thing before the Court at the hearing was consistent with
the theory that Frame was the actual owner of the note.
If he had been the owner he would naturally have
used Eversole's name in the mortgage proceedings. But
if Eversole was cheated by his agent, to whom he had
given the power of disposing of the note, the loss must
fall upon him.

Maull being the owner of the note, was in equity
entitled to the mortgage. *Story's Equity Jur., section*
1016; *Wallis vs. Dilley,* 7 *Md.,* 250.

He had, therefore, the right to have the suit entered to
his use, and was the proper person to make affidavit to
the mortgage claim.

The sale was finally ratified April 19th, 1876; and on
the 6th of June, 1877, after the lapse of several terms,
the petition was filed to set aside the ratification, and for
the other purposes mentioned. After the term it was too
late to assail the ratification in this way. *Young's Estate,*
3 *Md. Ch. Dec.,* 461.

The Court having dismissed the petition, which assailed
the entry of the suit to Maull's use, his right to the entry
was established, and was no longer the subject of contro-
versy in the Court below.

MILLER, J., delivered the opinion of the Court.

It appears from the record in this case that in 1873,
David W. Caskey mortgaged certain leasehold property in
Baltimore, to Abraham S. Eversole to secure a loan of
$750, for which he had passed to the mortgagee his prom-
issory note, payable one year after date. The mortgage
contained the usual consent clause for a decree under the
provisions of the Local Law of Baltimore City, on that sub-
ject, and on the 1st of March, 1875, a petition was filed in
the Circuit Court by Eversole, through *James Frame,* his
solicitor, for a decree for the sale of the mortgaged prop-

erty, and on the next day a decree was accordingly passed appointing Frame trustee to make the sale.    On the 29th of May, following, an order was filed in the cause signed by Frame as solicitor for the complainant, directing the clerk to enter the decree to the use of *Edward A. Maull,* and it appears to have been so entered on the docket. The cause remained in that condition until the 15th of March, 1876, when an affidavit was filed by Maull, stating that he was the purchaser, and endorsee of the note secured by the mortgage, and setting forth the amount. due thereon and on the mortgage by which it was secured. The trustee then proceeded to sell the property, and sold the same to Maull for the sum of $500.    The sale was duly reported, and in due course finally ratified by an order passed on the 19th of April, 1876.    The trustee then on the 9th of May following, executed a deed convey-- ing the property to the purchaser, who on the next day mortgaged the same to one Drinkhouse.    After this, but. before any account disposing of the proceeds of sale had been stated, Frame and Eversole both died; and on 6th of June, 1877, the widow and administratrix of Eversole, filed her petition in the case, alleging that her deceased husband had employed Frame professionally to institute the proper proceedings to collect the mortgage debt, and for that purpose had delivered to him the mortgage note; that having the note thus in his possession Frame fraudu- lently endorsed it to Maull, and then the better to con- summate the fraud upon his client, undertook to assign the decree to Maull without the client's consent or know- ledge, but did so without pursuing the special mode pre- scribed by law, and hence the attempted assignment is null and void; that the sale was also void because there was no proper affidavit made of the mortgagee's claim prior thereto, Maull not being the mortgagee nor in any way authorized to make the affidavit; that her husband never knew that the same had been made, Frame having

·concealed the fact from him, and having told him as late as October, 1876, that the property had not been sold; that she has but recently discovered the true state of the facts and the fraud which has been practiced upon her husband and his estate; that she has applied to Maull but is unable to obtain any satisfactory settlement from him, and she therefore prays that he and the administrator of Frame may be required to answer this petition, that the entry of the decree to the use of Maull may be vacated, the sale annulled and its ratification stricken out and for general relief. In his answer to this petition, Maull avers that he purchased the note from Frame and paid him $500 therefor, and when he so purchased it the note bore the endorsement of the name of Eversole the payee, and Frame then endorsed it to him; that the ·endorsement of the payee was a general one, and not for any special purpose, and he became the innocent holder thereof for value; that he did not know at the time in what manner Frame held the note except by this endorsement, nor for what purpose or consideration it was so endorsed to him, and that he was not aware of any fraud in connection with the purchase of the note, and has no personal knowledge now of any fraud ever having been perpetrated by Frame upon Eversole; that if Eversole did not receive the money due him, it was by reason of his misplaced confidence in Frame in thus endorsing the note generally to him, but this cannot affect respondent's rights in the premises; that the note being secured by mortgage he was subrogated to the rights of Eversole under the mortgage, and therefore the proper person in law to make the affidavit in the proceedings of foreclosure, and that it is immaterial in what manner the decree was entered to his use.

The case was submitted on this petition, and answer and the Court thereupon passed an order dismissing the petition. After this the auditor stated an account distribut-

ing the net proceeds of sale to Maull, and then by direction of the petitioner's counsel, stated another account distributing them to her. To the former account exceptions were filed by the petitioner, and to the latter by Maull. At the hearing of these exceptions several letters and documents admitted to be genuine were introduced, but Maull reserved and filed exceptions to their admissibility, competency and effect as evidence. The Court then passed orders rejecting the account in favor of the petitioner, and ratifying that in favor of Maull; and from these, as well as from the order dismissing her petition Mrs. Eversole has appealed.

In our judgment neither of these orders can be reversed, nor any relief afforded the appellant, if Maull purchased the note in good faith and for value without notice at the time, either actual or presumed, that Frame had no authority to sell and transfer it, or that he was committing a fraud upon Eversole by so doing. The note is in the usual form payable to the order of Eversole one year after date, was endorsed by him "without recourse," and so far as the record shows these words, "without recourse," were over his endorsement when he delivered the note to Frame. The precise times when it was thus delivered, and when it was sold and transferred to Maull are not stated, but it is plain that Frame received it after maturity, and we infer from the averments of the appellant's petition, and other parts of the record that he sold, endorsed and delivered it to Maull, before the decree in the proceedings upon the mortgage was entered to his use. But it is not to be doubted that a negotiable promissory note may be endorsed and transferred after as well as before maturity, the endorsee after maturity taking subject to all equities between the antecedent parties to it. What these equities are we learn from the decision of our predecessors in *Renwick vs. Williams*, 2 *Md.*, 356, where it is said, the only defences against which an endorsee

has to guard in taking an overdue note are, *first* those which have arisen since the execution of the note, and which are not collateral, but which relate to the note itself, and *secondly* those which are inherent in the note, and which would show it to have been void *ab initio,* such as fraud, mistake or absence of a sufficient consideration. In that case, the note sued on was an accommodation note, endorsed by the payee to the plaintiff, " without recourse " after it was due, and it was held that this did not prevent the plaintiff, a holder for value, from recovering against the maker. Prior to this, it had been decided in *Annan vs. Houck,* 4 *Gill,* 324, that a claim which the maker of a note has against the payee, not connected with it, cannot be set off in an action brought by the endorsee against the maker, though the note was endorsed after it fell due; and subsequently, in *Williams vs. Banks,* 11 *Md.,* 198, it was held upon review of the authorities, that in a suit by the endorsee against the maker upon an accommodation note endorsed by the payee when overdue, the maker cannot set off a note given to him by the payee. These decisions have undoubtedly followed the law as stated by Judge STORY, in *Story on Prom. Notes, sec.* 178, where it is laid down as the result of the authorities, that a transfer may be made at any time while the note remains a good subsisting unpaid note, whether it be before or after it has arrived at maturity, but if the transfer is after the maturity of the note, the holder takes it as a dishonored note, and it is affected by all the equities between the original parties, whether he has any notice thereof or not. " But when we speak of equities between the parties, it is not to be understood by this expression that all sorts of equities existing between the parties from other independent transactions between them, are intended, but only such equities as attach to the particular note, and as between those parties would be available to control, qualify, or extinguish any rights arising thereon.

The true test to determine whether a note is subject to an equity set up by the maker is this: Could the payee at the time he transferred the note have maintained a suit upon it against the maker, if it had then been mature? Subject to such equities, the holder by endorsement after the maturity of the note, will be clothed with the same rights and advantages as were possessed by the endorser, and may avail himself of them accordingly." So firmly is this doctrine imbedded in the law of this State by the decisions to which we have referred, and others to the same effect, that we are not at liberty to follow decisions elsewhere, if any such there be, that have departed from or materially modified it. Now in the present case it is not pretended that Caskey, the maker, had any defence to this note when it was transferred to Maull. The money was due and unpaid, and he could not have defended an action upon it, either by Eversole, the payee, or by Frame.

But it is said, it is a settled principle that a party who takes a negotiable instrument by endorsement or delivery, after it has become due, gets no *better title* than the party had from whom he received it. This doctrine has found observance and application where the instrument has been found or stolen after maturity by the party transferring it, or where there has been an antecedent transfer by operation of law, as in case of the bankruptcy of the payee, or where the party making the transfer has obtained possession and title by fraud; but we do not think that this principle, even if it should be regarded as *well settled*, can be applied to this case. It is not pretended that Frame obtained title to, or possession of the note in any of the modes indicated. It was endorsed to him "without recourse," and all that can be said about the transaction as between Eversole and Frame, is that the former delivered the note with this endorsement upon it, to the latter for the *purpose of collection*, and for that purpose alone. It becomes then a case where a principal has

by private instructions, restricted the unlimited ostensible authority he had conferred upon his agent, and where strangers dealing with the latter, have the right to presume that the *apparent* authority is the *real* authority. By this endorsement and delivery of the note to Frame, Eversole invested him with all the external *indicia* of absolute ownership, and the inquiry comes at last to this: Had Maull at the time he purchased, actual or constructive notice of Frame's privately limited authority? The only ground upon which such constructive notice is placed, is the fact that he knew at the time he dealt with him, that Frame was an attorney at law. But we are not prepared to lay it down as a legal proposition, that in every case where a party purchases or receives from an attorney, an overdue note endorsed by the payee in blank or without recourse, he is chargeable with notice that the note was entrusted to the attorney with no other power or authority than to institute legal proceedings to collect it from the maker, or put upon inquiry as to the attorney's real power and control over it. It follows that, in the absence of actual notice of the restricted authority, Maull had the right to rely, as against Eversole, upon the apparent and unlimited authority conferred by his endorsement. That endorsement as we have said, was made and the note delivered to Frame *after its maturity,* so that the trust reposed in him by Eversole *originated* after the note had matured, and was *continuing* at the time Frame sold it to Maull. In this particular there is a material difference between this case and that of *Foley vs. Smith,* 6 *Wallace,* 492, cited and much relied on by the appellant's counsel. In *Lister, et al. vs. Allen,* 31 *Md.,* 543, this Court had occasion to consider a case quite analogous to this, and it was there held, upon a review of the authorities, that if the principal should clothe the agent, although a mere special agent, with all the apparent muniments of an absolute title to the property in himself, the principal would be

bound by the acts of the agent in disposing of the property to *bona fide* purchasers. The equitable principle which underlies this doctrine, and which is universally admitted to be just and sound, is, that if a loss occurs by which one of two innocent persons must suffer, that one should sustain the loss who has most trusted the party through whom the loss came. Here the loss unquestionably occurred solely by reason of the trust and confidence reposed by Eversole in Frame. His failure to endorse his note "for collection," or to strike out his endorsement upon it when he delivered it to Frame, enabled the latter to commit the fraud of which he now complains. There is therefore no injustice in the rule which casts the loss upon him rather than upon the innocent purchaser of the note.

Thus far we have assumed that Maull was a *bona fide* purchaser for value, and on this question little need be said. In his answer to the appellant's petition, he says *he paid* Frame $500 for the note, and as the case in this respect appears to have been submitted on the petition and answer, this averment must be taken as true, for it is clear that where a cause is heard on bill and answer the latter is to be considered as true in regard to all matters in it which are susceptible of proof by legitimate evidence. *Warren vs. Twilley,* 10 *Md.,* 39. It must be assumed therefore, that he gave value for the note. Was he then an innocent purchaser? Of course he was not if he knew at the time that Frame contemplated and was committing a fraud upon his client, and that by purchasing the note he would aid him in carrying out that fraud. But upon this point the proof fails in face of the denials of the answer, to satisfy us that he had such knowledge or that he bought the note for that purpose. The letters between Frame and Eversole that were written after Maull's purchase, can of course have no effect upon him, and besides there is nothing in any of them, intimating that he was in

any way connected with the transaction. The agreement between Maull and Frame of the 10th of May, 1876, so far as it has any bearing on this question of *bona fides,* shows that *at the time* Maull purchased the note and paid the $500 for it, he took from Frame a guaranty for payment of the whole debt due on the mortgage by which the note was secured. This indicates plainly enough that Maull was unwilling to buy the note without making a good sum by so doing, but we find nothing in it which tends to show, that he had knowledge that Frame had no power to sell, or that by so doing he was perpetrating a fraud upon Eversole. Nor do the facts that he afterwards took the decree to his use, became surety on the trustee's bond, and bought in the property at the sale, tend to fasten upon him such guilty knowledge, for this was only a proper mode of collecting the note from the maker, which his purchase of it gave him the right to do. We must therefore hold that he was an innocent purchaser, and the orders appealed from must be affirmed.

> *Orders affirmed, and*
> *cause remanded.*

(Decided 12th December, 1878.)