YOUNG MEN'S CHRISTIAN ASS'N GYMNASIUM CO. *et al.*

*v.*

THE ROCKFORD NATIONAL BANK.

*Opinion filed April 18, 1899—Rehearing denied June 17, 1899.*

1. BILLS AND NOTES—*purchaser of note endorsed in blank is protected against latent equities of third parties.* A bank advancing money to the holder of negotiable notes endorsed in blank by the payee, without notice that they were held merely as collateral, is protected against the latent equities of third parties although the notes were overdue when the bank received them.

2. SAME—*when bank is not chargeable with notice that notes were held as collateral.* That negotiable notes endorsed in blank by the payee and bearing endorsements of interest were over-due does not charge a bank advancing money thereon to the holder with constructive notice of the fact that they were held merely as collateral security.

*Rockford Nat. Bank* v. *Gymnasium Co.* 78 Ill. App. 180, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Winnebago county; the Hon. C. H. DONNELLY, Judge, presiding.

A. D. EARLY, WILLIAM LATHROP, and FISHER & NORTH, for appellants:

The pledgee or holder of commercial paper as collateral security cannot sell or pledge the same in the absence of express authority so to do. *Joliet Steel Co.* v. *Brick Co.* 82 Ill. 548; *Union Trust Co.* v. *Rigdon*, 93 id. 458; *Zimmerman* v. *Veeder*, 98 id. 613; *Levy* v. *Bank*, 158 id. 88; Jones on Pledges, sec. 651; Colebrooke on Collateral Securities, (2d ed.) sec. 117.

The sale (or attempted sale) and delivery, after maturity, of collateral notes for the purpose of converting the same to the pledgee's use were without power and wrongful and fraudulent acts, and convey no title as against the pledgor or the owners of the principal notes. *Foley* v. *Smith*, 6 Wall. 492; *Osborn* v. *McClelland*, 43 Ohio St. 284; *Towner* v. *McClelland*, 110 Ill. 542.

The six collateral notes in question being past due and dishonored when Marcus S. Parmele transferred or delivered the same to the bank, the bank became and was charged with notice of the equitable rights of all the prior parties to said notes, and was also charged with notice of the extent of the rights and power of said Parmele to sell and transfer said notes for his own benefit, and in no event could said bank have acquired, by such alleged purchase, any right or equities beyond the rights and equities which said Parmele then had (if any) in said notes. *Bradley* v. *Marshall*, 54 Ill. 173; *Towner* v. *McClelland*, 110 id. 542; *Bradley* v. *Linn*, 19 Ill. App. 322; *Jay* v. *Reed*, 56 id. 130.

Where the pledge is to secure the payment of a debt the pledgee can sell only where the debt is due and after demand upon the pledgor to redeem, and only with notice of sale of the time and place. *Bank* v. *Baker*, 128 Ill. 533; *Cushman* v. *Hayes*, 46 id. 145; *Rozet* v. *McClellan*, 48 id. 345.

If the transfer is after the maturity of the note the holder takes it as a dishonored note and is affected by all the equities between the original parties, whether he has any notice thereof or not. Story on Promissory Notes, sec. 178.

R. K. WELSH, and WORKS & HYER, for appellee:

While a person taking past-due paper is chargeable with notice of all equities existing between the original parties to the paper, yet he is not charged with the equities of third parties in relation thereto. *Olds* v. *Cummings*, 31 Ill. 188; *Silverman* v. *Bullock*, 98 id. 19; *Humble* v. *Curtis*, 160 id. 193; *Himrod* v. *Gilman*, 147 id. 293; *Tyson* v. *People's Loan Ass.* 57 Ala. 331; *Goldthwaite* v. *Bank*, 67 id. 547; *Vinton* v. *Crowe*, 4 Cal. 309; *Hayward* v. *Stearns*, 39 id. 58; *Robinson* v. *Lyman*, 10 Conn. 30; *Stedman* v. *Jilson*, id. 55; *Simpson* v. *Hill*, 47 id. 417; *Fairchild* v. *Brown*, 11 id. 39; *Crosby* v. *Tanner*, 40 Iowa, 136; *Blake* v. *Koons*, 71 id. 356; *Connell* v. *Bliss*, 52 Me. 478; *Murray* v. *Lylburn*, 2 Johns. Ch. 441; *Hibernian*

*Bank* v. *Everman,* 52 Miss. 500; *Renwick* v. *Williams,* 2 Md. 356; *Eversole* v. *Maull,* 50 id. 95; *Hill* v. *Shields,* 81 N. C. 253; *Cochran* v. *Stewart,* 21 Minn. 435; *Mott* v. *Clark,* 9 Pa. St. 399; *Parker* v. *Stallings,* Phillips, (N. C.) 590; *Judson* v. *Corcoran,* 17 How. 615; *Bradford* v. *Williams,* 91 N. C. 7; *Pryor* v. *Wood,* 31 Pa. St. 142; *Blair* v. *Mathiott,* 46 id. 265; 2 Randolph on Com. Paper, secs. 675, 676, 678; *Bank* v. *Texas,* 20 Wall. 89; Tiedeman on Com. Paper, sec. 295; Story on Promissory Notes, sec. 176; *Redfearn* v. *Ferrin,* 1 Dow, 50; Colebrooke on Collateral Securities, sec. 95; Byles on Bills, (15th ed.) p. 191.

Title to notes endorsed in blank passes by delivery, and such an endorsement is treated as an endorsement to the ultimate holder at the time when it is actually made, no matter when the latter receives the paper. *Morris* v. *Preston,* 93 Ill. 215; *Palmer* v. *Bank,* 78 id. 380; Chitty on Bills, 229; *Central School Supply House* v. *Donovan,* 70 Ill. App. 208; *Giddings* v. *McCumber,* 51 id. 373; Colebrooke on Collateral Securities, (2d ed.) sec. 7; *Kinney* v. *Kruse,* 28 Wis. 183; Randolph on Com. Paper, sec. 706; *Brigham* v. *Gurney,* 1 Mich. 348.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The circuit court of Winnebago county granted the prayer of a bill by the Young Men's Christian Association Gymnasium Company, and of a cross-bill by Warren Gilmore, against appellee, for an injunction restraining it from collecting certain promissory notes and to compel it to pay over money received on a certain other note. The Appellate Court reversed that decree and remanded the cause with directions, and to reverse that judgment this appeal is prosecuted.

There is no dispute as to the facts. The gymnasium company having arranged with Marcus S. Parmele, of the firm of Knapp & Parmele, for a loan of $4000, executed its five promissory notes, dated September 3, 1891, due three years after date, with interest at seven per

cent per annum, payable semi-annually at the office of Knapp & Parmele,—one for $2000, payable to the order of Warren Gilmore; one for $600, to the order of Elizabeth L. Stires; and one for $600 and two for $400 each, to Knapp & Parmele or bearer. The payment of each of these notes was guaranteed by William H. Worthington, E. M. Aikin, Marcus S. Parmele, Charles E. Sheldon and F. G. Hogland, officers and stockholders in the gymnasium company, and the notes were placed in the hands of Parmele with twenty other promissory notes, each for $200, dated August 5, 1891, due three years after date, with seven per cent interest, payable semi-annually to the order of the gymnasium company, six of which were severally signed by John G. Penfield, P. R. Walker, C. R. Wise, H. H. Robinson, Charles E. Sheldon and Anton Neumeister, stockholders in said company, the remaining fourteen being executed by other persons also stockholders. Each of these $200 notes was endorsed by the payee, the gymnasium company, in blank, and a receipt taken from Knapp & Parmele therefor, as follows:

"Rockford, Ill., *Sept. 3, 1891.*

"Received of the Young Men's Christian Association Gymnasium Company notes as follows: (Here follows a description of each of the twenty notes,) endorsed by William H. Worthington, president, and E. M. Aikin, secretary and treasurer. Above notes held by undersigned as collateral security for the payment of notes as follows: (Here follows a description of the five notes.) When said notes last mentioned are paid and this receipt returned said collateral security will be delivered up.

Knapp & Parmele."

The $600 note payable to Knapp & Parmele was endorsed by them to Mrs. Katherine Scott and one of the $400 notes to Mary R. Tanner, the other being retained by Parmele. With these notes the desired $4000 loan was obtained and the money paid over to the gymnasium company by Parmele. Although the name of the firm of Knapp & Parmele appears in connection with the procurement of this loan, the transaction throughout was

with Marcus S. Parmele individually, and he retained possession of both the principal and collateral notes until September, 1896, when he delivered the six first described, for $200 each, endorsed in blank, as above stated, to the defendant bank as security for a loan procured by him. These notes were then past due and unpaid except as to the interest, which was endorsed upon each as paid to August 5, 1896. The bank had no actual notice of the capacity in which Parmele held them, and received them in the usual course of business without inquiry.

On October 2, 1896, Parmele made a general assignment for the benefit of his creditors to Joel B. Whitehead, as assignee, and turned over to him the $400 principal note remaining in his hands and all the collaterals except the six transferred to the bank. On October 6, 1896, the bank collected of Neumeister $202.92,—the amount then due on his note,—and afterwards brought suit against John G. Penfield on his note. The five principal notes and each of the collateral notes, except the one collected, remain wholly unpaid. Both the original and cross-bills seek to restrain the defendant from collecting the five remaining notes in its hands and to require it to pay to the gymnasium company the amount of the one collected. The right to this relief is predicated upon the theory that the assignment of said notes to the defendant by Parmele was without authority, and vested in it no title as against complainants.

The proposition that a pledgee or holder of negotiable paper as collaterals, in the absence of express authority, has no legal right to negotiate the same, may, as a general rule, be granted; but unless the bank, when it took the notes in question, was chargeable with notice that they were held by Parmele merely as collaterals, the rule cannot affect the decision of this case. If it was so chargeable, it must be upon the ground that, having acquired them after due, it was bound to take notice of the rights of the complainants, which is the principal

question upon which the decision must turn and to be hereafter considered.

That class of cases cited by counsel for appellants in which the assignor of commercial paper obtained possession without any right or legal title thereto, as by theft, finding or fraud, are not in point here. In those cases the rule that an owner cannot be deprived of his property without his consent obtains, subject, however, to the exception in favor of the negotiability of such instruments, that if they are transferred to an innocent purchaser for value before due, without any notice of the absence of title in the assignor, the transferee will obtain the legal title even against the true owner, but if the transfer is after maturity no title whatever will pass, no matter how innocently or with what good faith the assignee acquires the instrument. In the one case the purchaser gets a better title than his assignor had, while in the other he does not. And it has been held in cases falling within the latter rule, that the assignee takes the over-due paper subject not only to the equities of the maker, but also of those of the true owner or other third parties having an interest therein, the question in such cases being not one of negotiability but of legal title. *Henderson* v. *Case*, 31 La. 215, cited and quoted from in the argument, was a case of that kind, and the court said: "We do not think that the authorities cited by the defendant, to the effect that no collateral equities can affect an assignment of commercial paper transferred after maturity, can be applied to the case where there is a total want of right in the transferrer." The same distinction exists in the other cases of this class referred to by counsel.

In the case at bar the six notes in suit were placed in the hands of Parmele, bearing the endorsement of the payee, without any evidence whatever endorsed thereon or attached thereto that they were to be held by him otherwise than as absolute owner. He was thus clothed with every *indicia* of the legal title and absolute owner-

ship by the party to whom they were made payable.   It
is well settled that such 'instruments endorsed in blank
pass by delivery, the endorsement being treated as made
to each subsequent transferee; also, that the negotiability
of commercial paper does not cease with its maturity, but
may still be negotiated by endorsement.   We are unable
to find any fact in this record with which appellee was
chargeable when it obtained these notes, or any principle
of law which can be said to distinguish it from the ordi-
nary assignee of negotiable bills and notes after maturity.

The inquiry then must be, is the fact that such paper
is past due when transferred, sufficient, of itself, to
charge the taker with notice of the latent equities of
third parties.   Our statute fixes the rights of the maker
in such cases upon clear principles of justice, without
materially affecting the negotiability of commercial in-
struments; but to extend the same protection to whoever
may have acquired some collateral interest in the paper,
in the absence of actual notice of the same to a trans-
feree, would be to charge him with knowledge of a fact
not within his power of ascertainment and practically
destroy the negotiability of over-due instruments.   While
the question has never been before us in the present form
it is not altogether a new one.   We have frequently held
that the assignee of a mortgage holds it, and the indebt-
edness secured by it, subject to the same defenses which
might have been urged against the mortgagee.   In *Olds*
v. *Cummings*, 31 Ill. 188, it was held that such an assignee
was nevertheless protected against the latent equities of
third persons, and in *Silverman* v. *Bullock*, 98 Ill. 10, we
said (p. 20): "The rule in *Olds* v. *Cummings* is a reasonable
one and can readily be observed.   Persons dealing in such
securities can without difficulty inquire of the makers if
any defenses exist against them, but more than that it is
not practicable to do.   Of course, it would not be possi-
ble to discover, even by the utmost diligence, all persons
that might have equitable rights in the subject matter of

the assignment, and the adoption of a rule that would let in latent equities to prevail against the assignee would be to ensnare dealers in such securities." To the same effect are the cases of *Himrod* v. *Gilman*, 147 Ill. 293, and *Humble* v. *Curtis*, 160 id. 193.

Other courts and text-writers have, so far as we can ascertain, applied the same rule to negotiable securities assigned after due. In *National Bank of Washington* v. *Texas*, 20 Wall. 89, the Supreme Court of the United States says: "The transferee of over-due negotiable paper takes it liable to all the equities to which it was subject in the hands of the payee. But those equities must attach to the paper itself, and not arise from any collateral transaction." And again: "The position of the transferee must be at least as favorable as that of the assignee of a chose in action. There the assignee takes subject to the equity residing in the debtor, but not to an equity residing in a third person against the assignor." And in support of the doctrine thus announced the language of Chancellor Kent is cited, as follows: "The assignee can always go to the debtor and ascertain what claims he may have against the bond or other chose in action which he is about purchasing from the obligee, but he may not be able, with the utmost diligence, to ascertain the latent equity of some third person against the obligee. He has not any object to which he can direct his inquiries, and for this reason the assignee, without notice, of a chose in action was preferred in the late case of *Redfearn* v. *Ferrier*, 1 Dow, 50, to that of a third party setting up a secret equity against the assignor. Lord Eldon observed in that case that if this were not so no assignment could ever be taken with safety."

Upon the contention of appellants that appellee could take no better title than Parmele himself had, *Lee* v. *Turner*, 89 Mo. 494, *Hill* v. *Shields*, 81 N. C. 253, *Bradford* v. *Williams*, 91 id. 7, and *McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 329, cited by counsel for appellee against the position,

are in point. In the first case the Supreme Court of Missouri said: "But we do not see that the doctrine that the transferee of negotiable paper, to whom it is transferred after maturity, acquires nothing but the actual right and title of the transferrer, should control the disposition of this case. The note is assignable. If the true owner of a negotiable note over-due, or of a non-negotiable note, clothes another with the usual evidences of ownership, * * * and third persons are led into dealing with such apparent owner, they will be protected in their dealings." And in the *McNeil case*, passing upon the same question, the court used this language: "It must be conceded that, as a general rule applicable to property other than negotiable securities, (meaning, of course, before maturity,) the vendor or pledgor can convey no greater right or title than he has. But this is a truism predicable of a simple transfer from one party to another where no other element intervenes. It does not interfere with the well established principle that where the true owner holds out another or allows him to appear as the owner of or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance."

Story on Promissory Notes (sec. 178) states what we conceive to be the law of this case, as follows: "In general it may be stated that a transfer may be made any time while the note remains a good, subsisting, unpaid note, whether it be before or after it has arrived at maturity. But the rights of the holder against the antecedent parties may be most materially affected by the time

of transfer. * * * If the transfer is after the maturity of the note the holder takes it as a dishonored note, and it is affected by all the equities between the original parties, whether he has any notice thereof or not. But when we speak of equities between the parties it is not to be understood by this expression that all sorts of equities existing between the parties from other independent transactions between them are intended, but only such equities as attach to the particular note, and, as between those parties, would be available to control, qualify or extinguish any rights arising thereon. (The true test to determine whether a note is subject to an equity set up by the maker is this: Could the payee, at the time he transferred the note, have maintained a suit upon it against the maker if it had then been mature.) Still, however, subject to such equities, the holder, by endorsement after the maturity of the note, will be clothed with the same rights and advantages as were possessed by the endorser, and may avail himself of them accordingly." To the same effect are 2 Randolph on Com. Paper, sec. 675; Daniel on Neg. Inst. sec. 726 *b;* 2 Parsons on Bills and Notes, 42, *et seq.;* Tiedeman on Com. Paper, sec. 295.

In *Eversole* v. *Maull*, 50 Md. 95, the appellant, Eversole, being the payee of a promissory note made by Caskey, endorsed it generally and delivered it to one Frame, an attorney, for collection. Frame transferred it to the appellee, Maull, after maturity, for value, without notice of the purpose for which he held it. The court sustained the title of Maull against the claim of Eversole on the authority of the foregoing text by Judge Story and its own former decisions based thereon. The case seems to have received careful consideration, and the opinion of the court ably disposes of every substantial question raised in this case.

We have duly considered the cases referred to and quoted from by counsel in their extended argument on behalf of appellants, and we find them distinguishable

from this case either in the fact that the controversy arose between the maker of the instrument sued on and a transferee, or that the assignor had not the legal title to the paper when he transferred it. But if this were not so, we are clearly of the opinion that the claim of the appellee bank that it took these notes without becoming chargeable with notice of the rights of the complainants below is abundantly sustained by authority and is in consonance with our own decisions. As was said by the Supreme Court of Maryland in *Eversole* v. *Maull, supra:* "The equitable principle which underlies this doctrine, and which is universally admitted to be just and sound, is, that if a loss occurs by which one of two innocent persons must suffer, that one should sustain the loss who has most trusted the party through whom the loss came."

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*