## Demalain Justice, Appellant, v. John S. Stonecipher et al., Appellees.

1. BILLS AND NOTES, § 251*—*when person taking note after maturity not chargeable with notice of equities of third person.* A person taking past due paper is chargeable with notice of all equities existing between the original parties to the paper, the makers and payee, but he is not charged with notice of the equities of third persons.

2. BILLS AND NOTES, § 147*—*sections 52 and 59 of Negotiable Instrument Act construed.* Sections 52 and 59 of the Negotiable Instrument Act., J. & A. ¶¶ 7691, 7698, do not take from nor add to the law as to what constitutes a valid and binding transfer of negotiable paper between indorser and indorsee so far as the rights of innocent purchasers are concerned.

3. BILLS AND NOTES, § 247*—*when person taking notes through unauthorized transfer takes free from claim of owner.* Where an owner of notes indorsed them in blank and deposited them with a banker for safe-keeping and the banker without authority negotiated them to a third party as collateral security for his own indebtedness, *held* on bill for an accounting filed by the owner against the banker and such third party that though the evidence

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

showed the relation of a trusteeship between the owner and the banker such third party took good title to the paper in the absence of evidence showing that he took with knowledge of the banker's claim of ownership.

McBRIDE, J., took no part in the consideration and decision of this case.

Appeal from the Circuit Court of Marion county; the Hon. JAMES C. McBRIDE, Judge, presiding. Heard in this court at the March term, 1914. Affirmed. Opinion filed July 28, 1914. *Certiorari* allowed by Supreme Court.

BUNDY & WHAM and HOLT & WILSON, for appellant.

KAGY & VANDERVORT, for appellees.

MR. JUSTICE HARRIS delivered the opinion of the court.

The appellant filed in the Circiut Court his bill for accounting against appellee and other respondents. The allegations of the bill, in substance, were: That appellant on the thirteenth day of May, 1912, left with John S. Stonecipher, who was then doing and carrying on a banking business under the name and style of Citizens' Bank of Salem, Illinois, for safe-keeping and return on demand, nine promissory notes amounting to a total of $2,686, some of which were secured by real estate mortgages and some of which were not, all of which were past due, together with a school order for $52.50, one certificate of ten shares of stock in the State Bank of Iuka, Illinois, and also several deeds of conveyance to real estate and certain insurance policies, all standing in the name of Demalian Justice and belonging to him; that a demand in writing was made by appellant prior to the commencement of suit upon John S. Stonecipher and the said Citizens' Bank of Salem, Illinois, and that they failed and refused to return to appellant any of the above mentioned papers and securities; that the said John S. Stonecipher, acting either for himself or on account of said Citizens'

Bank, without authority from appellant and in fraud of his rights, negotiated to the Bridgeport State Bank or to the defendant T. M. Mooney, the Joseph Stanford note and real estate mortgage $500, the Ed. Beck note unsecured $300, the W. A. Lowry note and real estate mortgage $150, the G. M. Abney note and real estate mortgage $250, the Francis D. Carter note and real estate mortgage $800, the Albert Jourdan note and bond for a deed in connection therewith $400, all as collateral security for certain indebtedness owing by said Stoneciphher to the Bridgeport State Bank and T. M. Mooney; that the same were all past due and that the said Bridgeport State Bank and T. M. Mooney took and received the said notes and mortgages and each of them subject to all the rights and equities of appellant.

The bill further alleges that said Stonecipher, without authority of appellant and in fraud of his rights, assigned ten shares of Iuka Bank Stock, and that the said Stonecipher collected certain notes and the interest thereon for which he failed to account, which is not involved in this appeal. The bill further alleges that said Stonecipher and the said Citizens' Bank and each of them held the said property in trust for appellant, and should account and turn over to appellant all of said property in their respective hands. The bill alleges that the Bridgeport State Bank was threatening to collect the principal and interest of said notes in their hands and apply the same on the indebtedness of Stonecipher. The prayer was for an accounting with all of said defendants, and to enjoin them from disposing of all the property now in their possession and from collecting either principal or interest; that process was duly served on all parties defendant in said bill; that separate answers were filed to said bill by John S. Stonecipher, The Farmers' and Merchants' National Bank of Nashville, Illinois, T. M. Mooney of Bridgeport, Illinois, The Citizens' Bank and William

A. Mills, trustee in bankruptcy of the estate of John S. Stonecipher, the last named some time after the commencement of this proceeding having entered his appearance and filed answer; that the said defendants and makers of the notes and obligations hereinbefore mentioned, Joseph Stanford, Sarah Stanford, W. A. Lowry, Sallie Lowry, G. M. Abney, Francis D. Carter, Albert Jourdan, State Bank of Iuka, Illinois, and Ed. Beck, were defaulted.

The rights of the several parties, except as between appellant and the Bridgeport State Bank of Bridgeport, Illinois, having been by the decree of the trial court settled, determined and not appealed from will not be in this opinion further discussed or referred to except as it becomes necessary to dispose of the question of right between appellant and the Bridgeport State Bank of Bridgeport, Illinois, appellee.

The Bridgeport State Bank answered the bill of appellant, averring that the notes, mortgages and securities held by it were formerly the property of Demalian Justice, appellant, were indorsed by Demalian Justice and transferred to Stonecipher for a valuable consideration, and that the same became its property in the regular course of its business by purchase for a valuable consideration made in good faith without any knowledge of any claim of Demalian Justice in and to the same. Upon the issue so joined, appellant and appellee offered evidence upon the hearing before the chancellor, and the chancellor found for appellee and entered decree accordingly.

The facts, as they appear from the record that are in dispute, more particularly concern a transaction between appellant and one of the defendants John S. Stonecipher. Appellant on the thirteenth day of May, 1912, went to the place of business of John S. Stonecipher, who had been his personal friend and attorney for years, and left with him his valuable papers. The notes mentioned in the record he indorsed in blank and

turned over and delivered all the papers to Stone-
cipher, on that day, Stonecipher at the time delivering
to appellant the following receipt:
"$5439.30.                    SALEM, ILL., May 13, 1912.

Received of Demalian Justice, Five Thousand Four
Hundred Thirty-nine 30/100 Dollars. Deeds to all my
real estate including insurance policies on same.

For Collection, Safe-keeping, etc.

No.————          JOHN S. STONECIPHER."

From the evidence the word "Collection" was
erased. Considerable space and time is devoted in the
argument as to what was said between appellant and
Stonecipher at the time of signing this receipt, and
the day previous as to the object and purpose of this
transaction, all of which tends to show that both of
the parties were persons of considerable business ex-
perience and competent to take care of their interest
in a business transaction, and which evidence was
competent to etsablish the relation of trusteeship be-
tween appellant and Stonecipher, and might be com-
petent in this proceeding against appellee if it was
followed by evidence that on June 6, 1912, at the time
Stonecipher pledged these notes to appellee as col-
lateral for a loan to him of $3,000, appellee had knowl-
edge.of the claim of appellant as to ownership of these
notes, but no such contention appears from the argu-
ment nor from the record, and so the only part of the
transaction between appellant and Stonecipher affect-
ing the rights of appellee, as between appellee and ap-
pellant, is what was the effect of a blank indorsement
by appellant, payee in these several notes, and delivery
of them to Stonecipher, by him.

The argument of appellant as to consideration of
this evidence and the citation of authorities is based
upon his statement and quotation of the Statute (Sec-
tion 59, Chap. 98, Negotiable Instrument Act, J. &
A. ¶ 7698), as follows: "Every holder is deemed prima
facie to be a holder in due course; but when it is shown

that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course.'' And further quotation from section 52 of the same Act (J. & A. ¶ 7691) as to who is a holder in due course. The two sections of the statute quoted do not take away from nor add to the law as to what constitutes a valid and binding transfer of negotiable paper between indorser and indorsee, so far as the rights of innocent purchasers are concerned. The name of a payee upon the back of a negotiable instrument will transfer the legal title to the same. *Kistner v. Peters,* 223 Ill. 607; *Keenan v. Blue,* 240 Ill. 188. If appellant transferred by indorsement the legal title to these notes and by delivery of the possession of the same to Stonecipher, where in the evidence is there anything showing that the title of Stonecipher was defective? Even the receipt makes no reference to these notes or the indorsement. The fact that three of the notes on the dates of indorsement by Justice to Stonecipher were past due does not affect the validity of the indorsement nor make the title to the paper defective. A person taking past due paper is chargeable with notice of all equities existing between the original parties to the paper, makers and payee, but he is not charged with the equities of third persons. *Y. M. C. A. Gym. Co. v. Rockford Nat. Bank,* 179 Ill. 599; *Schultz v. Saroelowitz,* 191 Ill. 249. There being no evidence showing a defective title to this paper on the sixth day of June, 1912, no burden rested upon the holder, the Bridgeport State Bank, to prove that it or Stonecipher acquired the title in due course. Without a defective title and the burden imposed as a consequence thereof, the contention of appellant becomes a matter between appellant and Stonecipher of a misuse of the paper or the proceeds thereof without the restriction as to its use written into the indorsement and no notice brought

to the knowledge of the appellee and independent of the rights and equities of the parties to the original undertaking.

The Bridgeport State Bank having a good title to this paper, without knowledge of what the transaction between appellant and Stonecipher was, it becomes immaterial in the determination of the issue here involved. The makers of these notes are making no defense, and as to what defenses they might interpose is likewise immaterial. The rights between appellant and Stonecipher have been by this decree determined: That appellant voluntarily put the power in the hands of his trusted friend, for some reason, by the indorsement and delivery of these notes to dispose of as he saw fit and proper; that he cannot now be heard to say that his own friend and trustee perpetrated a fraud upon him, appellant, which from the evidence was known only to appellant and the person he selected. The party to suffer by such a transaction is the party who puts the wheels in motion and makes such an end possible.

We are of the opinion this decree is right in law and equity. That the Bridgeport State Bank did not take the notes and securities subject to any rights or equities of appellant, but took them in the regular course of business in good faith and for a valuable consideration which has not been satisfied. The judgment and decree will therefore be affirmed.

*Affirmed.*

MR. JUSTICE McBRIDE took no part in the consideration and decision of this case.