230    APPELLATE COURTS OF ILLINOIS.

Woulfe v. Douglas Storage Van & Express Co., 232 Ill. App. 230.

---

**Thomas R. Woulfe, Appellee, v. Douglas Storage Van & Express Company, Appellant.**

**Gen. No. 28,139.**

1. NEGOTIABLE INSTRUMENTS—*intermediate indorsement by unlicensed foreign corporation as impairing validity of note.* The fact that a promissory note made by defendant and given in payment for a motor truck was discounted by the payee to a foreign corporation which was not licensed under the Corporation Act, sec. 94, Cahill's Ill. St. ch. 32, ¶ 94, to transact business within the State is no defense to an action by a transferee of such note from such corporation by an indorsement "without recourse," where the note, when made, was marked "negotiable" by the maker, and

there is no evidence that plaintiff got the note by fraud, duress or other illegal means or without consideration, and it is immaterial that the foreign corporation had previously had judgment entered by confession for the face of the note where that judgment was terminated by a nonsuit.

2. NEGOTIABLE INSTRUMENTS—*what defenses admissible by maker against indorsee after maturity.* The provision of Cahill's Ill. St. ch. 98, ¶ 12, that in a suit by an indorsee of a promissory note after maturity thereon against the maker, the latter shall have any defense that he might have had against the payee or any intermediate holder, does not permit the maker of a note given in payment for a motor truck and indorsed by the payee to an unlicensed foreign corporation and by it transferred after maturity to a purchaser for value to set up as a defense thereto the fact that such foreign corporation was not licensed to do business in Illinois under Corporation Act, sec. 94, Cahill's Ill. St. ch. 32, ¶ 94, and to predicate thereon the invalidity of the note in plaintiff's hands.

Appeal by defendant from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1922. Affirmed. Opinion filed February 20, 1924. Rehearing denied March 6, 1924. *Certiorari* denied by Supreme Court (making opinion final).

CHARLES L. COHNS, for appellant

MAURICE A. BARANCIK and AARON SOBLE, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

By this appeal the defendant, Douglas Storage Van & Express Company, seeks to reverse a judgment by confession entered in the superior court of Cook county in favor of Thomas R. Woulfe, the plaintiff, for the sum of $2,209.59, upon a promissory note, which was signed by Douglas Storage Van & Express Company, and made payable to the order of the Tower Motor Truck Company.

On October 10, 1919, the defendant signed an instalment judgment note for the sum of $2,847.62. It was

payable to the order of the Tower Motor Truck Company, "at the time or times stated in the schedule of payments hereon, at the office of The Republic Mortgage Company, Frick Annex Building, Pittsburgh, Pa." It was payable in monthly instalments. On its face are the printed words, "Negotiable Instrument." It was then indorsed, "Tower Motor Truck Co. to the Republic Mortgage Company, Pittsburgh, Pa." It was also indorsed, without recourse, by the Republic Mortgage Company.

On October 10, 1920, at the suit of the Republic Mortgage Company, a judgment by confession in the municipal court was entered against the Storage Van & Express Company in the sum of $1,853.06, which included principal, interest and $50 attorney's fees. At the time that judgment was entered, the clerk of the municipal court wrote on the face of the note the following: "Judgment entered for $1853.06, October 10, 1920, Municipal Court of Chicago, James A. Kearns, Clerk." When offered in evidence in the superior court, the memorandum which had been written on the face of the instrument by the clerk of the municipal court appeared to be stricken out by being scratched out in ink.

At the trial, on May 9, 1922, in the superior court, which was without a jury, the defendant having already been given leave to plead, the judgment to stand as security, the plaintiff offered in evidence the note in question, and then rested.

It was admitted of record that the Republic Mortgage Company was a foreign Corporation, organized and existing under and by virtue of the laws of the State of Delaware, and that it had never complied with the laws of the State of Illinois in reference to the licensing of foreign corporations. It was further admitted that on October 19, 1920, judgment had been entered in the municipal court of Chicago on the same note in the sum of $1,853.06, and that the clerk of the court had indorsed the judgment on the face of the

note. It was also admitted that a nonsuit in that case was taken in the municipal court. The only further evidence offered was that which tended to show that the Republic Mortgage Company, a foreign corporation, was doing business in the State of Illinois at the time the note in question was transferred to the plaintiff, without right. One Harkleroad testified that he was employed by the Republic Mortgage Company during the year 1919, and worked for that company until the spring of 1920; that the branch of the Republic Mortgage Company that he had charge of had its office in the First National Bank Building, Chicago; that his business was "soliciting what you would call time payment paper; soliciting the business which was time payment paper on trucks and passenger cars"; that he signed his correspondence as division manager; that he used, in his business, cards which contained the name, "The Republic Mortgage Company. Telephone Central 5121, First National Bank Building, Chicago, Illinois. I. J. Harkleroad, District Manager"; that the office of the Republic Mortgage Company was room 1240, First National Bank Building; that on the outer door of the office was the name "The Republic Mortgage Company," which was later changed to the "Republic Acceptance Corporation." When asked who owned the furniture of the office, he answered, "The Republic Mortgage Company." He further stated that the principal office of the Republic Mortgage Company was at Pittsburgh, Pa.; that it had a lease on the suite of rooms in the First National Bank Building, Chicago, and paid the rent therefor; that his salary and the salary of the stenographer were paid by the Republic Mortgage Company; that it was his business to solicit paper from the different dealers; that it was then taken back to the office and from there forwarded to Pittsburgh; that from there checks were returned to the Chicago office and were later distributed to the dealers; that while he worked for the Republic Mortgage Company he handled a

great many transactions of that kind, possibly over a hundred. When shown the note on which judgment was confessed and asked if that represented one of the transactions which he handled while in the employment of the Republic Mortgage Company, he answered that he remembered the transaction with the Douglas Storage Van & Express Company, but could not state that that was the particular note involved.

A lease was offered in evidence to show that the Republic Mortgage Company had leased room 1027 on the tenth floor of the First National Bank Building from February 1, 1919, to January 31, 1922, for $2,160. It was also shown that the Republic Mortgage Company contracted with the telephone company for a telephone for room 1027, which was in operation from February 3, 1918, to May 25, 1920. One Aaron Soble, a lawyer, testified that sometime in June, 1921, the plaintiff turned the note in question over to him for confession, and that at that time the stamp showing judgment for $1,853.06 was on the note.

After the order was entered, upon motion and affidavit of the defendant, that the judgment be vacated and allowed to stand as security, and the defendant allowed to plead, the defendant pleaded, first, nonassumpsit; second, that the note was assigned by the Republic Mortgage Company to the plaintiff after maturity, and containing the municipal court judgment notation; and third, that the merchandise for which the note was given by the defendant was sold to it and bought by it in this State since January 1, 1902; that the Republic Mortgage Company was a foreign corporation which is not entitled to do business in this State, and that that company was at the time engaged in the business of buying and selling negotiable paper in Illinois in violation of the law. No evidence was offered concerning the merchandise as to when and where it was sold or bought. Of course, the original judgment by confession having already been entered and then, upon motion of the defendant, the judgment

being opened up and the defendant allowed to plead, the burden of making out a defense was upon the defendant.

It is contended on behalf of the defendant that the Republic Mortgage Company, when it transferred the note in question to the plaintiff, was doing business in this State as a foreign corporation without authority, and that, as the indorsement and delivery of the note to the plaintiff was subsequent to its maturity and at a time when there was indorsed on the note the memorandum of the clerk of the municipal court, the plaintiff was not a purchaser for value without notice, but took it subject to all the equities which the defendant would have had if it had been sued upon by the Republic Mortgage Company. Admittedly, the latter company is a foreign corporation and was not licensed to do business in the State of Illinois at the time in question. Section 94 of the Corporation Act [Cahill's Ill. St. ch. 32, ¶ 94] provides that: "No foreign corporation doing business in this State without a license shall be permitted to maintain any suit, at law or in equity, in any of the courts of this State upon any demand, whether arising out of contract or tort; and all such corporations shall be liable by reason thereof to a penalty therefor," etc. In the affidavit of the defendant, made upon the motion to vacate the judgment, it is stated that the note was signed by the defendant and given to the Tower Motor Truck Company, an Illinois corporation, as part payment of a motor truck, and, "that the Tower Motor Truck Company sold the note in question to the Republic Mortgage Company and indorsed the note over to the said company." It will be seen, therefore, that the defendant is seeking to retain the truck without paying for it; that it is undertaking affirmatively—after a judgment by confession was entered, and it was given the opportunity to prove, in good faith, that the judgment should not stand—to maintain, that because its written promise to pay, which it labeled a negotiable in

strument, may have passed through the hands of the Republic Mortgage Company in Illinois and not in Pennsylvania—which company, we may assume, discounted it for the benefit of the Tower Motor Truck Company—it in some way became tainted and in the hands of the plaintiff is a nullity.

Counsel for the defendant argues that section 94 of the Corporation Act was enacted to protect the people of this State from loss by foreign corporations which might be insolvent and worthless; but it does not follow from that, as a reasonable corollary, that it was enacted to assist a citizen of this State to evade an honest debt. Here the note itself was made by the defendant payable and delivered to the Tower Motor Truck Company. The note then was evidence of an outstanding obligation of the defendant to the Tower Motor Truck Company, or to anyone thereafter who by proper indorsement and delivery became entitled to the note. The Republic Mortgage Company is not a party to this suit. The evidence of the plaintiff's cause of action is the note itself made originally between the defendant as maker and the Tower Motor Truck Company as payee. The Republic Mortgage Company appears merely as intermediate indorser, "without recourse." It cannot reasonably be contended that when the note got into the hands of the Republic Mortgage Company the obligation of the maker, *ipso facto*, without payment, became extinguished. No case in this State so holds. No contract was made between the Republic Mortgage Company and the defendant. There are dicta to the effect that the contracts of noncomplying corporations are void, and yet it is always admitted that such corporations, although they may not be able to maintain suits in their own favor, may themselves be sued, which means that even such contracts, when made, are not nullities, are not extinguished. The fact that suit had been brought in the municipal court and a memorandum made on the face of the note, as long as that was termi-

nated by a nonsuit, is immaterial. There is no evidence that the plaintiff got the instrument by fraud, or duress, or any other illegal means, or even without consideration. Although the indorsement of the Republic Mortgage Company was made with the words, "without recourse," as stated in the Negotiable Instruments Act, "such an indorsement does not impair the negotiable character of the instrument." (Cahill's Ill. St. ch. 98, ¶ 58.) The tendency of the law has been for a long time to increase rather than decrease the negotiability of promissory notes. It certainly would be a great hardship if in the commercial world it became necessary for a prospective purchaser of bills and notes to pass, at his peril, upon the question whether an intermediate indorser, if a corporation, was complying with the law as to doing business in this State. *Cavanaugh v. Witte Gas & Gasoline Engine Co.*, 123 Ill. App. 571; *Weir & Craig Mfg. Co. v. Bonus*, 177 Ill. App. 626.

Paragraph 12, ch. 98, of our statutes provides that if any promissory note, "shall be indorsed after the same becomes due, and any indorsee shall institute an action thereon against the maker of the same, the defendant, being maker, shall be allowed to set up the same defense that he might have done had the action been instituted in the name and for the use of the person to whom such instrument was originally made payable, or any intermediate holder." That law was passed in 1845, and subsequently rewritten and passed in 1874. The defense therein provided for, evidently, does not mean such a defense as is here set up by the defendant. *Young Men's Christian Ass'n Gymnasium Co. v. Rockford Nat. Bank*, 179 Ill. 599. In the latter case it was held that a bank which advanced money to the holder of negotiable notes that were indorsed in blank by the payee, without having any notice that they were held merely as collateral, is protected against the latent equities of third persons, even

238     APPELLATE COURTS OF ILLINOIS.

Woulfe v. Douglas Storage Van & Express Co., 232 Ill. App. 230.

though the bank accepted the notes when they were overdue. In its opinion the court said:

"The inquiry then must be, is the fact that such paper is past due when transferred, sufficient, of itself, to charge the taker with notice of the latent equities of third parties. Our statute fixes the rights of the maker in such cases upon clear principles of justice, without materially affecting the negotiability of commercial instruments; but to extend the same protection to whoever may have acquired some collateral interest in the paper, in the absence of actual notice of the same to a transferee, would be to charge him with knowledge of a fact not within his power of ascertainment and practically destroy the negotiability of overdue instruments."

Further, the court cites and sanctions the following from section 178, Story on Promissory Notes:

"When we speak of equities between the parties, it is not to be understood by this expression that all sorts of equities existing between the parties from other independent transactions between them are intended, but only such equities as attach to the particular note, and, as between those parties, would be available to control, qualify or extinguish any rights arising thereon." (*Justice v. Stonecipher*, 267 Ill. 448.)

From the foregoing, it is obvious that the defense set up by the maker of the note is not such a defense as is contemplated by the statute. The note when made and delivered by the defendant to the payee was a valid, outstanding note, and represented an obligation on the defendant, and when by mesne indorsements it got into the hands of the plaintiff, even though after maturity, it was still a valid negotiable instrument. We are, therefore, of the opinion that as the defendant failed to show that it was not indebted on the note, and failed to prove any fraud, mistake, duress or other illegality affecting the instrument or any equity in its favor, the judgment must stand. The judgment is affirmed.

*Affirmed.*

O'CONNOR, J., concurs.

MR. JUSTICE THOMSON specially concurring: I concur in the decision of this case but I do not agree with all that is said in the foregoing opinion. The note in question constituted a contract between the defendant and the Tower Motor Truck Company, the payee. Although the note was on a form of the Republic Mortgage Company and was made payable at its office, the note did not constitute a contract with that company. It may not therefore be said, as the defendant contends, that the contract represented by the note was with a foreign corporation doing business in this State, without having complied with our statutory requirements, affecting foreign corporations.

The plaintiff took the note in question after maturity and he, therefore, took it as a dishonored note, and it is true, as the defendant contends, that in the plaintiff's hands the note is affected by all the equities existing between the defendant and the payee, or any intermediate holder, as provided in our statutes, chapter 98, sec. 12 [Cahill's Ill. St. ch. 98, ¶ 12]. But under the decisions of the Supreme Court in *Young Men's Christian Ass'n Gymnasium Co. v. Rockford Nat. Bank,* 179 Ill. 599, and *Justice v. Stonecipher,* 267 Ill. 448, this does not mean that all sorts of equities between the parties arising from other independent transactions between them, or all sorts of defenses that the maker might be able to interpose as against the payee or any intermediate holder, may be set up by the maker in an action brought on the note by the one who has taken it after maturity. But it means that only such equities and defenses may be set up by the maker, in such an action, "as attach to the particular note." In the cases cited, the notes involved had been deposited by the maker as collateral (in one case) and for safe-keeping (in the other case), and it was held that one who took such paper after maturity did not take it subject to the defenses that the one with whom the maker had deposited it had misused it.

In the case at bar, the defense that the intermediate holder, the Republic Mortgage Company, could not itself have recovered on the note, it being a foreign corporation, doing business in Illinois without having complied with the terms of our statutes, is a defense which does not "attach to the particular note." It is a defense which is entirely apart from the note and from the transaction involved in it. It is a defense based on a statutory disability of the Republic Mortgage Company to sue in the courts of this State, "upon any demand, whether arising out of contract or tort," as the statute puts it. That is a general disability which is in no way attached to the note. It therefore seems to me that it is not such a defense or equity as the defendant, maker of the note, may set up against the plaintiff, although the latter became the holder of the note after maturity.