## Antoine Delfosse v. Metropolitan National Bank.

1.  NEGOTIABLE INSTRUMENTS—*Chicago Time Warrants Are Not.*—A warrant in the following language—

"CHICAGO, Nov. 10, 1896.

TREASURER OF THE CITY OF CHICAGO :

From the tax levy of the year 1896, appropriated and levied for the police department, when received by you, pay James Byrnes, or bearer, the sum of ten hundred and ninety, $\frac{91}{100}$ dollars, with interest at the rate of six per cent per annum from the date hereof until paid, from the fund and in the manner provided in the annexed coupon; this warrant is issued on account of salary and is payable solely from the taxes of 1896 levied for said department when collected and not otherwise, which taxes are especially assigned and pledged to the payments of this and

all warrants drawn against such taxes, which warrants do not exceed seventy-five per cent of such appropriation, and this warrant is receivable in payment of city taxes of 1896 after the coupon is detached and paid by the comptroller.            GEORGE B. SWIFT, Mayor.
                                    Registered F. M. BARRETT,
Countersigned O. D. WETHERELL.                Chief Clerk "—
is not a negotiable instrument.

2.  FRAUD— *When One of Two Innocent Parties Must Suffer.*—When one of two innocent parties must suffer by the fraud of a third person, it must be one who places it in the power of such third person to commit the fraud.

3.  ESTOPPEL— *Where the Owner of Personal Property Permits Another to Appear as Such.*—Where the owner of personal property allows another to appear as such and innocent parties are led into dealing with such apparent owner, they will be protected.  By such an act the real owner is precluded from disputing as against such parties the existence of the title in the person dealing with them.

Replevin.—Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE.HANECY, Judge, presiding.  Heard in this court at the March term, 1901.  Affirmed.  Opinion filed November 21, 1901.

Statement by the Court.—Appellant brought replevin, adding a count in trover to his declaration, to recover the possession from appellee of a certain warrant of the city of Chicago, or, on failure to get the warrant, to recover its value.  Issues were formed but no question arises upon the pleadings.  A trial before the court, without a jury, resulted in a finding for the defendant and judgment thereon, from which this appeal is taken.

It appears from the evidence in substance that one James Byrnes had a contract with the city of Chicago for doing certain work, and sold his interest therein to the plaintiff, Antoine Delfosse, and one Baillargeon, who were then partners.   Later Delfosse sold his interest to Baillargeon, though the warrant in question was, for some reason not explained, given to Delfosse, who at the time agreed with Baillargeon that if the latter should have occasion to use the warrants issued on the work, Delfosse would loan them to him, Baillargeon.

The warrant involved in this suit is as follows:

" No. 6926 L.                    CHICAGO, Nov. 10, 1896.
TREASURER OF THE CITY OF CHICAGO :
From the tax levy of the year 1896, appropriated and

levied for the police department, when received by you, pay James Byrnes, or bearer, the sum of ten hundred and ninety, 91-100 dollars with interest at the rate of six per cent per annum from the date hereof until paid, from the fund and in the manner provided in the annexed coupon; this warrant is issued on account of salary and is payable solely from the taxes of 1896, levied for said department when collected and not otherwise, which taxes are especially assigned and pledged to the payments of this and all warrants drawn against such taxes, which warrants do not exceed 75 per cent of such appropriation, and this warrant is receivable in payment of city taxes of 1896 after the coupon is detached and paid by the comptroller.

George B. Swift, Mayor.

Registered, F. M. Barrett,

Countersigned, O. D. Wetherell.          Chief Clerk."

The warrant has upon it the following indorsements, to wit :

" I hereby certify that the within warrant was issued by the city of Chicago, to me, at par; in payment for, and for value received, I hereby assign same to bearer without recourse.

Jas. Bryne,

by Antoine Delfosse, Attorney in fact.

Antoine Delfosse.

Paid by city treasurer, July 2, 1897."

Delfosse, after receiving the warrant, having occasion to leave the city of Chicago, left it with his son, Charles Delfosse, to collect. While away from the city Delfosse authorized his son to permit Baillargeon, who wanted to use the warrant as security to one Graham for signing a bond for Baillargeon, to make use of the warrant for that purpose. Baillargeon and Charles Delfosse went together to Graham and an arrangement was made with the latter to leave the warrant with Graham as security for his signing Baillargeon's bond. When this arrangement was made, Charles Delfosse handed the warrant in question to Baillargeon, who gave it to Graham. Thereafter the warrant was handed back to Baillargeon, and he sold it to one Ferris, a note broker, for the appellee bank, the bank paying through Ferris the full value of the warrant.

It further appears that Baillargeon and Delfosse had gone to the office of Ferris on previous occasions with paper of like character to this warrant, to have Ferris get it cashed for them, which was done, and that on one of these occasions some three or four months before the warrant here in question was cashed, Delfosse told Ferris that " whatever Baillargeon would do in the way of offering paper for discount would be all right, and that he could discount them for him." Delfosse never had any business with the appellee bank, but admits that he went to Ferris and sold paper to Ferris, who paid him, Delfosse, though he says that he never, at any time, permitted Ferris to pay any of his certificates to Baillargeon. He does not, however, deny that he told Ferris that whatever Baillargeon did in the way of discounting paper would be all right.

F. H. Trude, attorney for appellant.

Follansbee & Follansbee, attorneys for appellee.

Mr. Presiding Justice Windes delivered the opinion of the court.

It is claimed for appellant that the warrant in question is not negotiable paper. This is the law, and it needs no citation of authority to establish it. Taking this law as a basis, it is contended that no title to the warrant passed by the sale of it by Baillargeon through Ferris to the bank, for the reason, as it is said, that Delfosse only indorsed and delivered the warrant to Baillargeon for a specific purpose, not parting with or intending to part with his title thereto nor intending to sell nor to authorize a sale of the warrant by Baillargeon. A number of cases, among others, Jennings v. Gage, 13 Ill. 610, Faucett v. Osborne, 32 Ill. 411, and Burton v. Curyea, 40 Ill. 320, are cited in support of the contention. We think none of these cases are applicable, and that they do not support a right of recovery by appellant herein. The first two cases referred to contain elements which clearly distinguish them from the case at bar, and the last case seems to be specially predicated upon

the fact that the true owner, who was in that case permitted to recover, was not chargeable with any negligence by means of which the wrong-doers were enabled to impose upon innocent parties. The same is in a general way true of each of the other cases cited, and relied upon by appellant's counsel. We can not undertake to refer to and discuss each of them in detail; suffice it to say, we are of opinion, from a careful consideration of the facts of this case, that it should be decided upon the principle announced in the cases of Williams v. Fletcher, 129 Ill. 357–66; Springer v. Kroeschell, 161 Ill. 358–63; R. R. Co. v. Phillips, 60 Ill. 190–5; Anderson v. Armstead, 69 Ill. 452–4, and Marshall v. Ender, 20 Ill. App. 312–18, which is that " when one of two innocent persons must suffer by the fraud of a third, it must be the one who places it in the power of such third person to commit the fraud."

The warrant in question is payable to bearer, and is besides indorsed by the payee as well as by the appellant, who claims to be the true owner. If it be true, as claimed by Delfosse, that he only permitted the warrant to go into Baillargeon's hands for a specific purpose, viz., to be by him used as security to Graham, and for no other purpose, still, by the indorsement and placing it in Baillargeon's hands, he put it within the power of the latter to assume the ownership of the warrant. He thus gave to Baillargeon the possession of the property, with every outward indication of ownership, making his possession equally rightful as if he had made an outright sale of the warrant to him. There is no claim, nor is there any evidence to support it, that Ferris knew or that any one representing the bank knew that Baillargeon had not a perfect right to sell the warrant. In fact, it is in evidence, and not denied, that on a previous occasion Delfosse told Ferris that whatever Baillargeon would do in the way of offering paper for discount would be all right. Delfosse should now, the bank having bought the warrant in good faith for value, be estopped to deny that the bank took title to the warrant.

In the Williams case, *supra*, the court say:

" As a general rule, applicable to property other than negotiable securities, the vendor or pledgor can convey no greater right or title than he has. * * * But when the true owner holds him out or allows him to appear as owner of or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or owners, which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance."

In the Springer case, *supra*, though the question under consideration was not personal property, the court states the general proposition as follows :

" Where the owner of property allows another to appear as the owner thereof, and innocent persons are thus led into dealing with such apparent owner, they will be protected. By such act a real owner is precluded from disputing, as against them, the existence of the title which he suffered to be vested in the party dealing with them."

We see no reason why the principle should not be applied in the case at bar.

In the Phillips case, *supra*, where the question was as to personal property—highwines, the court applied the same rule, and in substance held that where a seller delivers property to the purchaser, and thus vests him with *indicia* of ownership, and the purchaser sells or pledges it to a *bona fide* purchaser without notice, the latter acquires rights which will be protected. Where the property is thus placed in the hands of the purchaser, as to third persons who become *bona fide* purchasers, it does not matter as to the intent with which it was delivered.

In the Marshall case, *supra*, the court applied this rule to the case of a note and trust deed placed in the hands of one Schmidt by the owner, which were wrongfully sold to an innocent purchaser. The court say : " Marshall having thus placed these securities in the hands of Schmidt, and clothed him, or permitted him to be clothed, with the *in-*

*dicia* of ownership, is bound by what Schmidt did as the apparent owner;" and held that the title of the innocent purchaser from Schmidt would be protected.

The facts of this case, carefully considered, show that there was more than a mere bailment as between appellant and Baillargeon—that not only was Baillargeon clothed with every *indicia* of ownership, but Delfosse in substance told Ferris, who purchased the warrant for the bank, in effect that Baillargeon was empowered to dispose of the paper. This last feature of the case, we think, clearly distinguishes it from the facts of each case relied upon by appellant, and the judgment is therefore affirmed.