HORNBLOWER et al. v. CITY OF PIERRE.

(District Court, D. South Dakota, C. D. February 18, 1916.)

1. MUNICIPAL CORPORATIONS ⬖902—WARRANTS—NEGOTIABILITY AND TRANSFER—"NEGOTIABLE INSTRUMENT."

     City warrants, while negotiable in form, so as to be transferable by indorsement and delivery, are not negotiable instruments in the sense of

⬖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the law merchant, and are subject in the hands of a bona fide holder to any defense existing between the original parties.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1887; Dec. Dig. ☞902.

For other definitions, see Words and Phrases, First and Second Series, Negotiable Instrument.]

**2.** MUNICIPAL CORPORATIONS ☞902—VALIDITY OF WARRANTS—RECITALS.

A city cannot be bound by a false recital in a resolution of its council ordering an issue of warrants of the purpose for which they were issued, where they were in fact issued and used for a wholly unauthorized purpose, which fact was known to the payee.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1887; Dec. Dig. ☞902.]

**3.** EVIDENCE ☞83(1)—PUBLIC RECORD—PRESUMPTION.

An erasure and alteration in a record made by a public officer, in the absence of evidence to the contrary, will be presumed to have been lawfully made at the time the record was written.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 105; Dec. Dig. ☞83(1).]

**4.** MUNICIPAL CORPORATIONS ☞898—WARRANTS—ESTOPPEL OF CITY.

Where the Constitution and statutes of a state prohibited a city from incurring any indebtedness in excess of 5 per centum of the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes, and made it the duty of the county auditor to keep the record of such assessment, a purchaser of warrants issued by the city was charged with notice of the assessed valuation of its property as shown by the auditor's books, and the city cannot be estopped from showing that the warrants were in excess of the legal limit of indebtedness by the fact that the city auditor, who had nothing to do with such records, falsely certified to a larger assessed valuation.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1883; Dec. Dig. ☞898.]

**5.** MUNICIPAL CORPORATIONS ☞898—VALIDITY OF WARRANTS—RATIFICATION OR ESTOPPEL.

Where city warrants were void in their inception for lack of power to issue them, neither representations by its officers nor the payment of interest thereon by the city can operate as an estoppel or a ratification.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1883; Dec. Dig. ☞898.]

At Law. Action by Henry Hornblower and John W. Weeks against the City of Pierre. Trial to court. Judgment for defendant.

Gardner, Fairbank & Churchill, of Huron, S. D., for plaintiffs.
Karl Goldsmith, City Atty., of Pierre, S. D., for defendant.

ELLIOTT, District Judge. This is an action brought by the plaintiffs against the defendant upon 10 certain city warrants of the city of Pierre, for $1,000 each, dated July 29, 1890, consecutively numbered from 3614 to 3623, inclusive, and also upon 10 warrants of the said city of Pierre, dated July 29, 1890, for the sum of $500 each, numbered consecutively from 3591 to 3600, inclusive, and judgment is demanded for the sum of $15,000, with interest thereon at 7 per cent. per annum. Upon a stipulation in writing, waiving a jury, the case was tried by the court, without a jury.

Upon a careful review of the testimony, I find little dispute upon

the facts material to the issues. I find, from the evidence, that under date of July 28, 1890, the city council of the city of Pierre passed a resolution, as follows:

"It was moved that the sum of $25,000 for public improvements be appropriated and warrants ordered drawn for the same, payable to Coe I. Crawford, and upon motion the roll was called and the members answered their names and voted as follows: Alderman Coy voted aye, Hilger, aye, Haugen, aye, Meade, who voted aye, McNamina, who voted aye, Robinson, who voted aye. Absent and not voting, Alderman Kleiner. So the motion was carried and the warrants ordered drawn."

The warrants in question were issued pursuant to said action by said city council. The undisputed testimony is: That thereafter the city auditor presented said warrants to Coe I. Crawford, in whose favor they were drawn, and he thereupon, at the request of such city auditor, indorsed each of these warrants without recourse.

The said city auditor did not deliver said warrants to said Crawford, or leave them in his possession, but took them away with him, and thereafter delivered said warrants to the National Bank of Commerce at Pierre, S. D., for the use of a committee of citizens of the city of Pierre, known as the "Capitol Campaign Committee," of which John Sutherland was the chairman or president, intending that the proceeds of all said warrants were to be used for the purpose of defraying the expenses of said capitol campaign, and thereafter B. J. Templeton, who at that time was mayor of the city of Pierre, and president of the said bank, negotiated the sale of said warrants to plaintiffs. That the National Bank of Commerce, or B. J. Templeton, paid nothing for said warrants, either to said Crawford or to the said city of Pierre. That said Templeton, president of said bank, went to the city of Boston, and interviewed plaintiffs, and arranged for the sale of these warrants for the use and benefit of said Capitol Campaign Committee; the arrangement not being entirely consummated and being subject to further investigation on behalf of plaintiffs. That plaintiffs, for the purpose of determining the financial condition of the city, made inquiry of the city officials, and in addition to the representations which had been made by Templeton, orally, to the plaintiffs at Boston, Mass., a certificate was made by the city auditor, under the seal of the city, and sent to the plaintiffs, which was introduced in evidence and is referred to as Exhibit A, as follows:

"Exhibit A (Copy).

Statement of the Financial Condition of the City of Pierre This 22d day of July, 1890:

| | | |
|---|---:|---:|
| Assessed valuation | | $ 3,154,965 |
| Real valuation (estimate) | | 10,000,000 |
| Total bonded debt: | | |
| Fire bonds | $ 5,000 00 | |
| Park bonds | 15,000 00 | |
| Funding | 25,000 00 | $ 45,000 |
| Total outstanding warrants | | 120,000 |
| Total city debt | | $165,000 |

"I certify that the foregoing statement is correct.

"H. E. Dewey, City Auditor.

"[Seal of the City of Pierre.]"

It further appears that upon receipt of this communication, the plaintiffs wrote a letter, Exhibit B, as follows:

"Exhibit B (Copy).

"B. J. Templeton, Esq., Pierre, So. Dakota—Dear Sir: The papers which we asked for when you were in Boston arrived this morning, and seem to be, with two exceptions, what was required. In the first place, the city auditor, in his valuation of the city, gives it $3,154,965, outstanding bonds $45,000, total outstanding warrants $120,000, and a total city debt of $165,000. This is about $9,000 more than assessed valuation allows, 5 per cent. Doubtless there is some explanation of this which we do not know. Of course, these warrants, issued over and above 5 per cent., would not he legal, unless there is something about it which we do not understand. We also inclose certificates of legality of warrants, which we wish you would ask the city attorney and Mr. Johnston to sign, and return to us. The certificate of legality which they have sent on does not mention any issue of warrants, but reads as if all warrants issued by the city council were legal.

"Yours truly,                    [Signed]   Hornblower & Weeks."

And the president of the National Bank of Commerce wrote, upon the stationery of said bank, a letter, Exhibit C, as follows:

"Exhibit C (Copy).

| "B. J. Templeton, | Adolph Ewert, | A. P. Farr, |
| "President. | Cashier. | Ass't. Cashier. |

"The National Bank of Commerce,

"Capital, $75,000.00

"Notice: Holders of City of Pierre warrants Nos. 2592 to 2601, inclusive, and 2661 to 2738, inclusive, will present the same for payment. Interest on the said warrants will stop from Aug. 1, 1890.

"H. E. Cutting, City Treasurer."

"Pierre, South Dakota, July 30, 1890.

"Hornblower & Weeks, Boston, Mass.—Gentlemen: I arrived home all O. K., 'top side up with care,' and am wading through about a foot deep of letters, including yours of the 26th inst. The auditor, in making his statement to you, was in error in this: He gave the bonded indebtedness as $45,000, and warrants $120,000. The fact is the funding bonds of $26,000, which I sold to S. A. Kean & Co., Chicago, were part of the $45,000 item, and the proceeds take up so many of the outstanding warrants, as you will by the inclosed notice from the city treasurer, so that the statement should read:

Bonds .............................................. $ 45,000
Warrants ..........................................    95,000
                                                     _____
Total debt ........................................ $140,000

—which is within the limit, and in addition our tax levy just made will yield us about $70,000, and we have called an election to vote bonds to take up all outstanding warrants, as I explained to you. The warrants were not issued until my return, owing to the fact that the president of the city council was out of town and there was no one authorized to sign them until I got home. I notice also that the auditor on several other matters a little mixed, but on the whole it was substantially correct.

"The warrants, $25,000, were shipped you by our cashier yesterday by Am. Express, with instructions as to remittances. Thanking you for favors, and trusting this explanation will prove all satisfactory.

"Yours truly,                    [Signed]   B. J. Templeton.

"P. S.—Inclosed certificate of city attorney and A. W. Johnston, lawyer, as requested"

—and inclosed therewith a certificate of the city attorney and of A. W. Johnston, lawyer, as requested by the plaintiffs, which were not

offered in evidence, they having been lost; but the evidence in the case shows that plaintiffs testified that they in effect stated that the warrants were regularly issued and were legal obligations of the defendant city.

The evidence discloses that, in compliance with the terms of the last paragraph of this letter, the warrants in suit were included in the $25,000 shipped to plaintiffs by the cashier of the National Bank of Commerce by American Express. It further appears from the evidence that thereupon, under date of August 8, 1890, the plaintiffs wrote to Templeton, who was the president of said bank, advising that plaintiffs had deposited with the National Bank of Deposit of New York City draft for $23,500, the proceeds of $25,000 in warrants, advising him that the remaining $12,500 would be forwarded later. It further appears from the testimony of one of the plaintiffs, and I find the fact to be, that the money referred to as being deposited in the National Bank of Deposit of New York in payment of these warrants in suit was deposited for and to the credit of the National Bank of Commerce, Pierre, S. D.

I find that the testimony with reference to this transaction, whereby the plaintiffs purchased the warrants in suit, is entirely consistent with and supports the allegation of the amended complaint of the plaintiffs herein, and I therefore find the fact to be that the plaintiffs did not participate in or have any knowledge of the manner in which the said warrants were issued, or the purpose for which the money was to be used, and "that said National Bank of Commerce immediately thereafter sold said warrants to the plaintiffs in this action, in the regular course of business, for value, and delivered each of the said warrants to these plaintiffs, and that these plaintiffs are now the owners and holders of said warrants," as set forth in paragraph 3 of the amended complaint herein. I further find that the plaintiffs never paid the city of Pierre any consideration for these warrants, and the city and none of its officers received any part of the proceeds of the sale of said warrants.

Under the undisputed record of the circumstances attending the issuance of these warrants and the indorsement by Coe I. Crawford, the payee, viewed in the light of the reasonable inferences that must be drawn therefrom, with a reasonable interpretation of his testimony, I find that he knew, at the time of the indorsement of said warrants, the purpose for which these warrants had been issued, and the intent and purpose to use the proceeds thereof by the said Capitol Campaign Committee; that the record shows no inquiry or investigation to determine what was the assessed valuation of the defendant city, or the amount of its outstanding indebtedness, except inquiry of Templeton, and the statements made by him and the certificates furnished in the manner above set forth. The only testimony in the record as to the use of the proceeds of these warrants is to the effect that they were used for capitol campaign purposes by this Capitol Campaign Committee.

The record in the county auditor's office of the county of Hughes, which is the county in which the city of Pierre is situated, shows the assessed valuation of the city of Pierre for the year 1889 was the sum

of $971,068, and the amount of cash on hand in the city treasury of the city of Pierre, as shown by the records of the said city, was at that time the sum of $1,359.22. There were erasures in the records in the county auditor's office showing the assessed valuation of the city for the year 1889, and the substituted figures were clearly in the handwriting of Sebree, the then county auditor of Hughes county. The records of said county auditor also showed, in addition to the assessed valuation of the property of the city of Pierre, for the year 1889, the amount of taxes levied, to wit, $17,619.44.

I also find that at the time of incurring this indebtedness and the issuance of these warrants the property of the city of Pierre had not been equalized for the assessment for the year 1890, and that the assessment for the year 1889 was the last complete assessment that had been made prior to the date of the issuance of said warrants. I find that no such public improvements as specified in the warrants in suit were made in the city of Pierre, by Crawford or any other person, and that Crawford at no time performed any service for the city of Pierre, or furnished any materials of any kind to the city of Pierre, and that the city of Pierre was never indebted to him in any sum for any cause at the time of the issuance of said warrants. I find that the city council of the city of Pierre made no appropriations to cover the expenditures ordered by the said warrants, or for any public improvements of any kind or character for the years 1889 and 1890.

It further appears that the annual appropriation of said city for the fiscal year beginning September 1, 1889, and ending August 31, 1890, was as follows: $16,000 for general purposes, and $1,600 for interest and sinking fund—and that the same had been fully expended prior to the 29th day of July, 1890, when said warrants were issued; that no further appropriations were made by the said city during the said fiscal year, and there was no provision made or attempted for the collection of an annual tax sufficient to pay the interest and principal of the debt evidenced by these warrants in suit, when due.

I further find: That the indebtedness of said city of Pierre, upon the date of issuance of said warrants, amounted to the sum of $218,875.52, and upon that date exceeded 5 per cent. of the assessed valuation of the property within the corporate limits of said city of Pierre. That at the time the plaintiffs' warrants were issued, and at all times since, this indebtedness of the said city has appeared upon the records of the proceedings of the city council of said city of Pierre, kept as required by law as a public record, including the proceedings of the board of equalization for the city of Pierre, and also the public record of the board of the county of Hughes, and the board of equalization of the state of South Dakota, kept by the city auditor, the auditor of the county of Hughes, and the auditor of the state of South Dakota, respectively, as required by statute, and that all of said records are and at all times have been open to inspection. That at the time of the alleged indebtedness represented by the warrants of the plaintiffs herein the prior registered warrants, after subtracting all of the money then in the city treasury from the total amount, exceeded the total amount of taxes levied to pay the expenses of the city of Pierre

during the fiscal year in which the said warrants were issued, together with the moneys received from fines and licenses, and the plaintiffs' warrants are not drawn against any fund to create which a tax had theretofore been levied, and they were not drawn against any anticipated fund to be collected from a levy of tax made by the council of the city of Pierre to pay such indebtedness evidenced by said warrants. Plaintiffs' warrants were not drawn against any fund levied to pay the current expenses of the city of Pierre for any year, but were drawn generally upon the funds of said treasury of the city of Pierre. That this alleged indebtedness accrued July 29, 1890, and payments of interest due thereon were made semiannually until October 29, 1895, since which time no payments have been made.

The foregoing findings dispose of the contentions of the parties respectively, so far as questions of fact are concerned. The plaintiffs insist earnestly that there is a total absence of any evidence in the record to show that either Coe I. Crawford, the payee in the warrants, or the plaintiffs, participated in, or had any knowledge of, any conspiracy, as alleged in the answer, and insist that the evidence shows a fraud attempted to be perpetrated by the city officials and by the citizens of Pierre, through their citizens' committee, for the purpose of securing the funds of these plaintiffs.

The foregoing finding as to the knowledge of Coe I. Crawford disposes of that issue in so far as it is dependent upon his knowledge. There is an affirmative finding, however, that the plaintiffs did not participate in or have any knowledge of the manner in which the warrants were issued or the purpose for which the money was to be used, and that leaves the simple question of the extent to which the plaintiffs are bound by the knowledge of Crawford, or the National Bank of Commerce.

[1] These warrants are not negotiable instruments, such as to exclude an inquiry as to the legality of their issue, even in the hands of a bona fide holder, or to preclude defenses which are available as against the original payee. The statutes of South Dakota do not, either expressly or by implication, enable the holder of warrants to exclude inquiry as to legality. A municipal corporation cannot invest such instrument with the character of commercial paper, so as to give it immunity in the hands of a bona fide holder from any defenses existing between the immediate parties. These were ordinary orders, warrants, certificates of indebtedness, and obligations to pay, issued by the city of Pierre, and as such enable the holders, the plaintiffs, to sue in their own name, but are not negotiable instruments, so as to exclude inquiry into the legality of their issue or preclude defenses available against the original payee. Hubbell v. Town of Custer, 15 S. D. 55, 87 N. W. 520; Gilman v. Township of Gilby, 8 N. D. 627, 80 N. W. 889, 73 Am. St. Rep. 791; Goose River Bank v. Willow Creek School District, 1 N. D. 26, 44 N. W. 1002, 26 Am. St. Rep. 605.

The rule that obtains in this circuit, was declared by Judge Caldwell in Watson v. City of Huron, 97 Fed 449, 38 C. C. A. 264, wherein it is declared:

"Such instruments are not subject to the rules of the law merchant or in any manner to be treated like negotiable bonds. Whatever differences of

opinion may have existed among the courts 50 years ago as to the negotiability of such warrants, the courts are now unanimous that, while such warrants establish prima facie the validity of the claims allowed and authorize their payment, they have no other effect; that they are in form negotiable, and transferable by delivery, so far as to authorize the holder to maintain in his own name an action on them, but they are not negotiable instruments, in the sense of a law merchant, so that, when held by a bona fide purchaser, evidence of their invalidity or defenses available against the original payee would be excluded."

Under this rule, now universally recognized, these plaintiffs occupy no better. position than the original payee, who had notice of the object for which the warrants were issued.

[2] The fact that the resolution of the city council of the city of Pierre, ordering these warrants to be issued, falsely and fraudulently recited that they were intended for public improvements, cannot aid the plaintiffs, nor can a defense by the plaintiffs be predicated upon a reliance by plaintiffs upon such records or upon such records and statements of the officers of the defendant. Coe I. Crawford, the payee, paid absolutely no consideration for these warrants; the city was not indebted to him in any manner; he performed no service, furnished no material, for which these warrants were given in payment; he had no claim of any kind. or character against the city; no consideration was ever received by the city for the warrants, either from Crawford or from the Capitol Campaign Committee, or the National Bank of Commerce.

These plaintiffs, with reference to the above findings upon these subjects, stand in no better position than Coe I. Crawford, the National Bank of Commerce, or the Capitol Campaign Committee. The Constitution of the state of South Dakota (article 10, § 2) provides that:

"No tax or assessment shall be levied or collected, or debts contracted by municipal corporations, except in pursuance of law, for public purposes specified by law. * * *"

The campaign for the location of the capitol at Pierre was entirely foreign to the purposes and objects of the corporate existence of the city of Pierre, and its officers were not authorized to burden the municipality with debts incurred in furtherance of this campaign. The city and its officers were entirely powerless to issue the warrants in suit therefor. These plaintiffs, in the purchase of these warrants, and all others dealing with the officers of the municipality, or its warrants, had notice and were charged with a knowledge of the law under which no liability could be created or incurred against the .city of Pierre for capitol campaign purposes.

[3] In the foregoing findings, reference is made to the fact that the public records of the county auditor's office, showing the assessment for the year 1889, showed upon their face that they had been altered—that there were erasures, and figures inserted after such erasures were made. It is insisted by the plaintiffs that such public records have no probative force. The Supreme Court of the state of South Dakota has, in a number of decisions, held that, in the absence of other evidence to the contrary, the erasure of an instrument is pre-

sumed to be made prior to or contemporaneous with the execution of the instrument. Moddie v. Breiland, 9 S. D. 507, 70 N. W. 637; Bank v. Feeney, 12 S. D. 156, 80 N. W. 186, 46 L. R. A. 732, 76 Am. St. Rep. 594; Cosgrove v. Fanebust, 10 S. D. 213, 72 N. W. 1040. This presumption is stronger where the instrument is an act of a public officer, who is presumed to act lawfully and to do his duty, and who has no personal interest in the transaction. Northwestern Mortgage Trust Co. v. Levtzow et al., 23 S. D. 562–564, 122 N. W. 600.

Though there is some conflict as to the general rule as to presumptions to which courts are committed, there is practically universal agreement that an alteration in an instrument which is the act of a public officer, will be presumed to have been made before execution, at least if it has since been in his custody or the alteration is in his hand. A public officer is presumed to act lawfully and to do his duty, and he usually has no personal interest in the transaction. There is a compilation of decisions of various states of the Union to be found in Tharp v. Jamison, note 2, at page 114, 39 L. R. A. (N. S.).

The court's attention was called especially to the clear, precise handwriting of Mr. Sebree, the auditor at the time the entries were originally made, and it then seemed clear, and the court has entered its finding, that the entries over the erasures were in his handwriting. The fact that the erasures and changes were made when the record was being made up and before the duplicate was filed in the county treasurer's office was evidenced by testimony introduced, showing that the records in the office of the county treasurer, without erasures, the same being duplicates of the original under consideration, show that the assessed valuation and the amount of taxes to be collected for the year 1889 are the same as those shown in the record containing the erasures. In the absence of any testimony impeaching these records, I am of the opinion that this contention of the plaintiffs cannot be sustained.

[4] But it is said by plaintiffs that this presumption has, in this record, been overcome by proof of statements made under the official signature and seal of the city at the time the transactions in question took place. This exception has reference to the certificates made by the city auditor, furnished the plaintiffs at the time the warrants were sold, and referred to in the foregoing findings. This brings us to a consideration of the effect of this statement of this officer, as to the important fact of the amount of the assessed valuation of the property of the city of Pierre.

It is conceded that, under the statutes of the state of South Dakota, the public record of the assessed valuation of the property of the city of Pierre, provided for by the statutes of the state, were records of the county auditor's office of the county of Hughes, in which the city of Pierre was situated. It has been held that a recital of facts which the corporate officers had no authority, by statute, to determine or certify, does not estop the corporation. National Life Ins. Co. of Montpelier, Vt., v. Mead, Treasurer, 13 S. D. 37, 82 N. W. 78, 48 L. R. A. 785, 79 Am. St. Rep. 876; Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. 315, 28 L. Ed. 360. And the purchasers of these warrants

of this municipality, which was subject to constitutional and statutory provisions limiting its indebtedness to a certain percentage of its assessed valuation, were bound to ascertain, at their peril, from the proper public records, the amount of such valuation. St. Lawrence Township v. Furman, 171 Fed. 400, 96 C. C. A. 356, 17 Ann. Cas. 1244.

The Constitution of the state of South Dakota (article 13, § 4) in effect at the date of the incurring of the indebtedness represented by said warrants, provided that:

"The debt of any county, city, town, school district, * * * or other subdivision, shall never exceed five per centum upon the assessed valuation of the taxable property therein."

Pursuant to this provision of the Constitution, the Legislature of the state of South Dakota provided a law, relating to the incorporation of cities, that the city council should have power—

"to borrow money on the credit of the corporation for corporate purposes, and to issue bonds therefor, in such amounts and forms, and on such conditions as it shall prescribe, *but shall not become indebted in any manner for any purposes to any amount including the existing indebtedness in an aggregate to exceed five per centum of the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness.*" Session Laws 1890, p. 69, art. 5, § 1, subd. 5.

It will be noted that the statute expressly provides that the value of the taxable property is *"to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness."* The question whether these warrants exceeded the constitutional or statutory limitation was not left to the municipal officers of the defendant city, but instead the facts from which the question was to be determined were, by statute, required to be made a matter of public record in the county auditor's office of said county of Hughes, open to the inspection of all persons, which records disclosed the extent of the issue, and therefore no estoppel can be predicated upon recitals by said city auditor or other officers of the city, to the contrary. Under these circumstances, these plaintiffs were charged with the duty of examining the records, provided by statute, in order to ascertain whether the warrants increased the indebtedness of the municipality beyond the limit. National Life Ins. Co. of Montpelier, Vt., v. Mead, Treasurer, 13 S. D. 37, 82 N. W. 78, 48 L. R. A. 785, 79 Am. St. Rep. 876; St. Lawrence Township v. Furman, supra.

Plaintiffs themselves testified that they made no inquiry in this case to ascertain the amount of this assessment from the county auditor's office, and the certificate of the city auditor, or other officers of the city, cannot be considered by the court to contradict the public record of the county auditor's office, kept in the manner provided by statute, open to examination of the public, from which the true amount of the assessed valuation could be obtained.

An examination by the plaintiffs of the record in the county auditor's office of the county of Hughes, where the public record provided by the statute above referred to, was to be found by the public, would

have disclosed that the assessed valuation of the city of Pierre, for state and county purposes, for the year 1889, was the sum of $971,068, and an examination of the records of the city would have disclosed the fact that the amount of cash on hand in the city treasury at the time of the issue of said warrants was $1,359.22. The latter records would have also disclosed an existing indebtedness of the city of Pierre, in the sum of $218,875.52, which indebtedness, upon that date, exceeded the constitutional and statutory 5 per cent. limit of indebtedness, and therefore that the officers of the city were without power to incur the indebtedness represented by the warrants in suit.

[5] The next contention of the plaintiffs is that the defendant, by reason of the acts and representations of its officers, charged with the duty of managing the city's affairs, and the payment of interest in accordance with the findings herein, ratified the acts of the officers in the issuance of said warrants, and thereby established their validity, and that the city of Pierre is therefore estopped to question the validity of the warrants in suit, or to allege and prove the fraud attempted to be perpetrated upon the plaintiffs by the city and its officials. This objection of the plaintiff is involved in the foregoing and determined against the plaintiffs.

I may add, however, that in the case at bar there was a total lack of power to issue the warrants originally, under any circumstances, and not a mere failure to comply with prescribed requirements or conditions. Therefore the doctrine of ratification or estoppel by reason of the payment of interest on the warrants, or by reason of recitals in the public records or certificates by officers, has no application as against this defendant, the city of Pierre. Parkersburg v. Brown, 106 U. S. 487–501, 1 Sup. Ct. 442, 27 L. Ed. 238. These municipal warrants were void in their inception for want of power to issue same, and not merely because of irregularities in their issue. Therefore the payment of interest thereon by the municipality, however long continued, does not amount to a ratification which estops the municipality from pleading their invalidity. Clarke v. Town of Northampton, 120 Fed. 661, 57 C. C. A. 123. A municipal corporation cannot ratify or be estopped by an act void in its inception and wholly ultra vires. Bogart v. Township of Lamotte, 79 Mich. 294, 44 N. W. 612.

The officers of the city of Pierre were not authorized, either by the Constitution or the laws of the state, and were not appointed a tribunal to decide the fact which constitutes the condition, in the case at bar, the constitutional and statutory limitation. Therefore any action by these officers, whether by certificate or otherwise, will not be accepted as a substitute for the truth that would have been revealed by an examination of the proper public record in the office of the county auditor of the county in which the city was situated. In other words, in order to estop the city of Pierre by the acts or certificates of its officers, it is necessary that such officers had authority to do the acts and make the recitals *and to make them conclusive.* The ground of the estoppel is the recitals of the officers, statements of those to whom the law refers the public for authentic and final information on the subject. Flagg v. School District No. 70, 4 N. D. 30, 58 N. W. 499–504,

25 L. R. A. 363. Applying this rule to the facts as they have been found in this record, the plaintiffs' position cannot be sustained.

Proper findings may be prepared in favor of the defendant and against the plaintiffs upon all of the issues in the case, and proper judgment in favor of the defendant and against the plaintiffs, dismissing the plaintiffs' complaint, and that it go hence without day, with its costs.