George E. Hart, Inc., Appellant, v. Board of Education of the City of Chicago, Appellee.

Gen. No. 37,503.

Opinion

filed December 19, 1934.

John R. McSweeney, Harry A. Silverstein and Ben Copple, all of Chicago, for appellant.

Richard S. Folsom, of Chicago, for appellee; Frank S. Righeimer, Ralph W. Condee, Frank R. Schneberger and Harry L. Yale, all of Chicago, of counsel.

Mr. Justice Wilson delivered the opinion of the court.

This was an action of trespass on the case on promises brought by George E. Hart, Inc., against the Board of Education of the City of Chicago. To plaintiff's declaration the defendant filed a demurrer which was sustained and plaintiff electing to abide by its declaration, a judgment was entered against plaintiff for costs, from which judgment this appeal has been taken.

The declaration consisted of one special count and the common counts. No point is made concerning the common counts and we are only interested in the allegations of the special count of the declaration.

Plaintiff alleges in this count that it became the legal owner of certain warrants commonly known as tax anticipation warrants issued by the Board of Education of the City of Chicago and payable to bearer at the office of the treasurer of the City of Chicago out of taxes levied for the year 1931, for school building purposes. The special count further charges that on the 11th day of April, 1932, plaintiff intrusted to one James C. Terry the aforesaid warrants for the purpose of depositing the same in the Merchants Bank and Trust Company for safe-keeping; that said James C. Terry deposited said warrants in said bank and received in return a receipt made out to said James C. Terry and signed by the Merchants Bank and Trust Company; that James C. Terry delivered the aforesaid receipt to the plaintiff and, thereafter, with intent to defraud the plaintiff, fraudulently executed an affidavit stating that he had lost the aforementioned re-

ceipt and thereupon received possession of said warrants from the said bank; that plaintiff notified the defendant corporation, Board of Education of the City of Chicago, of the loss of the aforesaid warrants as set out, giving a list of the warrants and the identification numbers and that the defendant having received funds to retire said warrants commenced making payments in accordance with the terms of the warrants. Plaintiff further alleges that it was the duty of the defendant not to redeem from any person other than the plaintiff any of the warrants, possession of which had been wrongfully taken from the plaintiff, but regardless of its duty paid out moneys to certain persons on some of the warrants so belonging to the plaintiff; that although the plaintiff has made numerous demands for the payment of this indebtedness the defendant refused and still refuses to pay plaintiff the sum of $13,450 due it.

Plaintiff insists that these tax anticipation warrants are non-negotiable and that the defendant paid them at its peril. The defendant takes the position that they are negotiable instruments in the hands of third persons without notice, subject only to the defenses of the municipality to the tax levy. In addition defendant insists that the plaintiff by intrusting the warrants to Terry, its agent, made it possible for him to commit the wrong complained of in the declaration and that, therefore, by its conduct it made it possible for him to dispose of the warrants to innocent parties and that as between the owner and innocent parties, the one who made it possible to commit the wrong should be made to suffer the consequences.

No question is raised as to the power of the Board of Education to issue the warrants in question, payable out of 75 per cent of the taxes levied, in the payment of expenditures for educational and building purposes. It is a matter of common knowledge that such warrants pass from hand to hand. The instru-

ment itself is payable to bearer at the office of the treasurer of the City of Chicago on presentation.

The Negotiable Instruments Act, Cahill's Illinois Revised Statutes, 1933, ch. 98, ¶ 21, provides:

"An instrument payable in money, to be negotiated, must conform to the following requirements:

"1. It must be in writing and signed by the maker or drawer.

"2. Must contain an unconditional promise or order to pay a sum certain in money.

"3. Must be payable on demand or at a fixed or determinable future time.

"4. Must be payable to the order of a specified person or to bearer."

Paragraph 23 of the same act provides:

"When promise to pay is unconditional. § 3. An unqualified order or promise to pay is unconditional within the meaning of this Act, though coupled with:

"1. An indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount; or

"2. A statement of the transaction which gives rise to the instrument." This section then goes on as follows:

"But an order or promise to pay out of a particular fund is not unconditional."

The foregoing provisions are a reannouncement of the common law governing negotiable instruments. The courts have differed on the question as to whether or not a tax warrant is a negotiable instrument. A number of the courts are not in accord with the proposition that such an instrument is negotiable in all respects, except as to the defenses of the municipality. In other words, the holder of the warrant on presentation may find himself faced with the same difficulty on attempting collection as the original owner of the warrant would have encountered. *Hornblower v. City of Pierre,* 231 Fed. 496.

In the case of *Woodworth v. School District No. 2,* 103 Wash. 677, it was held that school warrants issued in payment of supplies to an agent having apparent authority to make collection, and assigned to a bona fide purchaser prior to any notice of want of authority, shall be paid by the municipality to an innocent holder even after it had received notice that the agent had no authority to accept the warrants. The court in its opinion adopts the following as the rule:

"The great weight of authority is that a county or city warrant possesses all of the qualities of negotiable paper but one, viz., that it is open to any defense which might have been made to the claim upon which it is founded. For all purposes involving its title, it must be treated as negotiable." See also *Marcus v. Ofner,* 103 Wash. 478. This court appears to have adopted the rule that the tax warrants are negotiable for all purposes except as to the defenses of the municipality. That the holder is protected, however, in the same manner as he would be if he were a holder of a promissory note before maturity without notice of any defects, even though it had been stolen from the original owner. In other words, the negotiability of the instrument is complete except as to such defenses as the municipality may have when the warrant is presented for collection. The passage of such warrants has become such a matter of common occurrence that we are of the opinion that ultimately this rule may be generally adopted, but this State has passed flatly upon the question in the case of *Morrison v. Austin State Bank,* 213 Ill. 472. The Supreme Court of this State, quoting from the opinion of *First Nat. Bank v. Gates,* 66 Kan. 505, takes the position as stated in that opinion, as follows:

" ' . . . The question is, therefore, is a county warrant, which is negotiable in form but non-negotiable in the sense that the county issuing it may defend against it, nevertheless negotiable as between

successive holders, so that a thief may vest title to it
in a bona fide taker of it? That one so acquiring or-
dinary commercial paper would be protected is not
questioned. An innocent purchaser, in good faith, of
commercial paper gets a good title, even though he
purchase from a thief. (Citing authorities.) This is
so because of the law merchant. . . . But paper non-
negotiable for any reason is not thus protected. The
very fact of its being non-negotiable is a sign of warn-
ing to the prospective purchaser and places him on
his guard. Municipal warrants, though negotiable in
form, are non-negotiable in fact, hence they are not
within the protection of the rule which guards commer-
cial paper.' To the same effect is *Keller v. Hicks*,
22 Cal. 457; 83 Am. Dec. 78.'' See also *Marshall v.
State ex rel. Sartain*, 88 Fla. 329. Judge Hand dis-
senting in the case of *Morrison v. Austin State Bank,
supra*, says:

''I think the warrants in question were so far nego-
tiable as to vest title in the Austin State Bank against
all persons except the town of Cicero. To hold other-
wise would be to impair the commercial value of such
warrants, and increase the cost to the property owner
of all local improvements in municipalities in this
State.'' The dissenting opinion hereinabove set forth
takes the position that such instruments are negotiable
in all respects in the hands of an innocent purchaser
for value as to title, but subject only to the defenses
of the municipality.

While we are not thoroughly in accord with the rule
laid down in *Morrison v. Austin State Bank, supra*, we
are, nevertheless, constrained to follow it.

Coming to defendant's proposition to the effect that
the warrants having been intrusted to an agent of the
plaintiff for the purpose of depositing the same with
the Merchants Bank and Trust Company and after-
wards withdrawing the warrants on his affidavit to the
effect that he had lost the receipt, we are confronted

with the question as to whether or not the plaintiff had put it within the power of its agent to commit the wrong perpetrated and had clothed him with such indicia of ownership with reference to the warrants that the bank could deliver them believing him to be the owner, and that his act in disposing of them for a valuable consideration to bona fide purchasers, estopped the plaintiff from setting up its claim to the proceeds. In this connection we find that the declaration alleges that the plaintiff intrusted the warrants to Terry for the purpose of his depositing them with the Merchants Bank and Trust Company; that Terry took the receipt in his own name and afterwards disposed of the warrants to innocent purchasers. There is no allegation in the declaration to the effect that the bank knew that Terry was not the owner nor knew that the plaintiff was the real owner of the warrants in question. The warrants were deposited by Terry in his own name and it would have been an easy matter for the plaintiff upon the return of the receipt to have notified the bank that it was the owner and to have required a receipt in its own name. The failure to do this left open the very avenue for wrong which Terry took in obtaining possession of the warrants. When these warrants were presented to Terry he was intrusted with them for a specific purpose and, so far as the outside world was concerned, was the actual owner and holder. This court in the case of *Delfosse v. Metropolitan Nat. Bank,* 98 Ill. App. 123, in its opinion says:

"The warrant in question is payable to bearer, and is besides indorsed by the payee as well as by the appellant, who claims to be the true owner. If it be true, as claimed by Delfosse, that he only permitted the warrant to go into Baillargeon's hands for a specific purpose, viz., to be by him used as security to Graham, and for no other purpose, still, by the indorsement and placing it in Baillargeon's hands, he

put it within the power of the latter to assume the ownership of the warrant. He thus gave to Baillargeon the possession of the property, with every outward indication of ownership, making his possession equally rightful as if he had made an outright sale of the warrant. There is no claim, nor is there any evidence to support it, that Ferris knew or that any one representing the bank knew that Baillargeon had not a perfect right to sell the warrant. In fact, it is in evidence, and not denied, that on a previous occasion Délfosse told Ferris that whatever Baillargeon would do in the way of offering paper for discount would be all right. Delfosse should now, the bank having bought the warrant in good faith for value, be estopped to deny that the bank took title to the warrant.''

In the case of *Otis v. Gardner,* 105 Ill. 436, the court in its opinion says: ''The intestate placed the certificates in the hands of Chauncey T. Bowen, with a blank assignment written thereon, authorizing an absolute transfer of the stock to the assignee, under the by-laws of the company. The exact use the assignee should make of the stock does not appear from anything in the record, but as the use he might make of it was in no way limited by the terms of the assignment, it is reasonable to presume the assignee was authorized to make any legitimate use of it that a rightful owner might,—that is, he might sell it or pledge it, in the usual course of business. That was done in this case. It was pledged to Gardner, in the usual course of business, as collateral security for the indebtedness of the holder, and was taken in good faith, without the slightest knowledge that any one other than the pledgor claimed or had any interest in the stock represented by the certificates.'' To the same effect see *Young Men's Christian Ass'n Gymnasium Co. v. Rockford Nat. Bank,* 179 Ill. 599.

Daniel on Negotiable Instruments, 7 Ed. vol. 1, sec. 315, lays down the rule: "So, the principal will be bound in all cases where there is a misappropriation of funds obtained under a power exercised by the agent in conformity with his authority, unless the holder had notice. And, however much an agent may betray his trust, a bona fide holder of the bill or note, without notice, may hold the principal liable. The principal would, therefore, be bound on an accommodation indorsement made by the agent in his name, in the general scope of agency, to a bona fide holder without notice." Again Daniel on Negotiable Instruments, 7 Ed. vol. 2, sec. 981, states:

"§ 981. There are numerous cases in which the line of demarcation between the fraud which does not affect the bona fide holder for value, and without notice, and that which utterly vitiates the instrument in all hands whatsoever, is narrow and difficult to distinguish. The distinctions taken are frequently very refined and metaphysical; but the test questions to be applied, we think, are these: (1) Has the party sought to be charged created an agency or trust, by means of which the fraud has been committed? (2) Has he deliberately given the appearance of validity to the instrument? (3) Has he committed negligence respecting it, by means of which an opportunity for the fraud has been created? And whenever either of these questions can be answered affirmatively upon a fair consideration of all the circumstances of the case, the balance of equity is in favor of the bona fide holder for value and without notice, the axiomatic principle of law then applying, that where one of two innocent persons must suffer, the one who creates the trust, or does the act from which the loss results, must bear it."

The warrants involved in this proceeding were payable to bearer and there was nothing upon their face which indicated that they were the property of any

one other than the holder. These instruments have been passing from time to time as a regular business transaction, particularly in later days when municipalities have been compelled to anticipate their tax collections. If Terry had sold the warrants after they came into his possession and before he deposited them with the bank, we believe there would be no question but that an innocent purchaser would be protected. In view of the fact that, upon obtaining a receipt from the bank, the plaintiff was able to ascertain that it was in the name of Terry and took no steps to correct it, leaving an opportunity for the fraud which was committed, the fault was that of the plaintiff. This receipt was given by the bank April 11, 1932. Suit was started in November, 1933, nearly a year and a half after the warrants had been deposited for safe-keeping with the Merchants Bank and Trust Company.

In view of the common practice of the barter and sale of these warrants in the open market in this community, we believe that the plaintiff failed to take such steps as were necessary to protect its interest and should be estopped from making a claim against the defendant which would be superior to that of an innocent purchaser of these warrants for value. Under the circumstances, the defendant, Board of Education of the City of Chicago, and the treasurer of the City, would have no right to refuse payment of these warrants when presented.

The demurrer to the special count of the declaration in our judgment was properly sustained and, for the reasons stated herein, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

HEBEL, P. J., and HALL, J., concur.